## J. T. KALLUM V. JOHN W. WHEELER.

No. 6753. Decided February 3, 1937.
Rehearing overruled March 3, 1937.
(101 S. W., 2d Series, 225.)

*Cox & Hayden,* of Abilene, for plaintiff in error.

*Wagstaff, Harwell, Wagstaff & Douthit,* of Abilene, for defendant in error.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

This is a personal injury suit by J. T. Kallum against John W. Wheeler. A jury trial resulted in a judgment in Kallum's favor. The Court of Civil Appeals reversed the trial court's judgment and rendered judgment in favor of Wheeler. 68 S. W. (2d) 591. The writ was granted on alleged conflicts.

The injuries complained of were sustained by Kallum as the result of his falling through the floor of a passageway extending across the front of the second story of a business building owned by Wheeler. The building is between and adjacent to two others. The three constitute a solid block of business buildings, and front south on North Front Street in Merkel, Texas, a town of about 2,000 inhabitants. For convenience they will be designated as the Boney building, the Wheeler building and the

Warren building. The Wheeler building is located in the center and is adjoined by the other two, the Boney building on the west and the Warren building on the east. The last named is one story in height. The other two are two stories high and each has office space on the second floor. A stairway located on the inside of the Boney building leads to the upstairs offices in that building. The means of entering the upstairs office of the Wheeler building is a passageway extending from the sidewalk in front of the Warren building to the door which opens into the office. The door is located on the front of the building west of the center. The passageway consists of a steel stairway and its landing erected on the front of the Warren building and a platform or awning erected on the front of the Wheeler building. The stairway begins at the sidewalk in front of the southeast corner of the Warren building and runs up and westward across the front of that building to where the landing joins the platform. The platform, which serves the dual purpose of awning and passageway, extends across the front of the Wheeler building to the door referred to. The stairway was on the front of the Warren building when both that building and the Wheeler building were owned by Warren. In 1909 Warren sold the middle building and the stairway on the east building to Wheeler. While the stairway was located on the front of the Warren building it served only the upstairs offices on the second floor of the middle building and was sold to Wheeler as a part of it.

When Wheeler purchased the building the Woodman Circle was occupying a part of the office space upstairs and the City Council a part. A cotton exchange had an office there after the Woodmen and city council ceased using it. Later an employee of the restaurant on the lower floor of the building rented it for sleeping quarters. That was in 1929. Later Dr. Gambill, a dentist, had some of his things stored there. At the time of the accident involved Wheeler had no tenants in the office space on the second floor of his building, and had had none for about three years. The east half of the lower floor was occupied by Buford's barber shop, and the west half by a cafe.

Kallum was an inspector of the State Board of Barber Examiners and was at Merkel in connection with his duties on the occasion of his injuries. While there he had occasion to go to Dr. Gambill's office. He had been told shortly before the accident that the office was upstairs near Buford's barber shop. Kallum mistakenly believing the office upstairs over Buford's shop in the Wheeler building to be Dr. Gambill's office, went up the stairway and onto the passageway leading to the door of the office on the second floor of the Wheeler building. As he

approached the door the flooring of the awning, or passageway, gave way, precipitating him to the sidewalk below.

Kallum, after describing in his petition the premises on which the accident occurred and the adjacent building and stairways, alleged that in going upon the stairway and awning leading to the offices on the second floor of the Wheeler building he was an invitee on the premises and that defendant Wheeler owed him ordinary care to properly supervise the same so as to avoid injuring him; that he was negligent in failing to close the stairway leading to the landing or awning described in order to keep the public and him especially from using same, and was also negligent in failing to exercise ordinary care in the matter of inspecting the awning or landing to ascertain the existing condition; that he was negligent in maintaining the awning or landing adjacent to the entrance to the second story of his building in its decayed and rotten condition and open to the general public, and also negligent in failing to put up and maintain some kind of warning sign or danger sign, or some barrier to entering the stairway.

The floor of the platform was constructed of pine, "two by eights" or "two by sixes." Wheeler stated he had reconstructed it about ten years prior to the accident and that it was exposed to the elements and that he had not repaired or inspected it since that time.

The jury found that Kallum was not negligent in going upon the awning.

Kallum after passing upon the awning from the stairway proceeded along the passageway about twenty feet until it gave way and he fell through it. Where he fell through appears to be just in front of the door which opens into the upstairs of the building.

With respect to the condition of the floor Wheeler said he saw the hole through which Kallum fell and saw the decay and deterioration after the fall. The jury found it was unsafe to go upon, and that Wheeler knew of its unsafe condition; that he was negligent in permitting the awning to be in the condition it was in at the time of the accident, and that such negligence proximately caused the injuries. The jury found also that Kallum did not know of its unsafe condition and could not have known of it by the exercise of ordinary care; that he believed at the time he fell he was going to Dr. Gambill's office and was not negligent in going upon the awning. The jury also found that Wheeler was negligent in "failing to place an obstruction or sign on the stairway to prevent people from ascending it," which proximately caused the injuries.

Wheeler stated he did not put any sign or barrier upon the stairway indicating the upstairs was no longer occupied after the tenants moved out; also that after the offices had been vacated he left the stairway and platform arrangement just as it was when the offices were occupied. Wheeler knew the office was unoccupied, and of the condition of the passageway. Kallum did not. Wheeler stated the door was locked and the windows nailed down; that he "first tried to keep it locked," but could not, and "put a board on the inside * * * and then nailed it to the floor so they could not push it open." "Yes," he said, "somebody broke (it open) and went in there. I guess that is when they took that first plank down I had nailed in there."

The Court of Civil Appeals in reversing the judgment of the trial court in Kallum's favor and in rendering judgment in favor of Wheeler, did so upon the theory that Kallum was a trespasser upon the premises.

The question of liability in this case does not turn upon whether Kallum in going upon the passageway did so upon a direct business mission to see either the owner or some occupant of the building. He alleged no duty on Wheeler's part arising out of any business relations he had with him, but a duty Wheeler was under because of an implied invitation or inducement to him as a member of the public to enter upon the passageway. The uncontroverted evidence presents directly the question of whether Kallum was impliedly induced or invited to enter the passageway and will be first considered.

Kallum upon the occasion in question was en route to an upstairs office in the building, using the passageway leading thereto as a means of approach. The stairway and platform onto which it led constituted a passageway from the sidewalk to the office and to no other place. The office became vacant but Wheeler continued thereafter to maintain the same arrangement for entry that he provided when the office was occupied. He erected no barrier to entering the stairway, nor displayed any warning sign upon the passageway.

The specific inquiry is whether the means provided as an approach to the office, unobstructed as it was, and without warning sign, constituted an implied invitation or inducement to such members of the public, including Kallum, as honestly believed they had occasion to use it, to do so. If so he was not a trespasser in entering upon the passageway as an approach to the office.

No case presenting a similar state of facts is relied upon by the Court of Civil Appeals in holding Kallum was a trespasser.

As it would unduly prolong this opinion to discuss all of the cases cited in support of its holding, only a few will be referred to.

In Galveston Oil Company v. Morton, 70 Texas 400, 7 S. W. 756, plaintiff entered the building on the premises without invitation or inducement from it and proceeded to another room without requesting a guide. The Court held that the owner was not liable to others for injuries occasioned by its unsafe condition when the person receiving the injury was not at the place of danger and the owner had "neither expressly nor impliedly invited him there, nor allured him by attractions or inducements exhibited or held out in some way calculated to lead him into danger, without giving notice of the peril to be avoided."

In Kruse v. Houston T. & C. R. Co., 253 S. W. 623, the platform on which the injury occurred was not a necessary passageway to a destination of a member of the public's having been induced to go upon it. Nor are we prepared to say that even under the facts as stated the trial court did not err in refusing to submit the case to the jury.

In Book v. Heath, 181 S. W. 491, plaintiff, a tenant of the building, was using a back stairway to an office building. It was in no way connected with his office and did not constitute a way of egress or ingress thereto. Chief Justice FLY speaking for the Court in this connection, states a rule however that has application in the present case, as follows:

"An invitation may be express, as when the owner in terms invites another to come upon the premises, to make use of it or something thereon, or it may be implied when *the owner by acts or conduct leads another to the belief that such use is not only acquiesced in by the owner, but is in accordance with the intention or design for which the way or place or thing was adapted, prepared, and allowed to be used.*" (Italics ours.)

See also in this connection the following statement in Corpus Juris under the subheading "Implied Invitation Generally," Vol. 45, p. 811, Section 220.

"Where the owner or person in charge of property has, by his conduct, induced the public to use a way over the premises in the belief that it is a street or public way which all have the right to use, and where users will be safe, the liability of the owner or person in charge is coextensive with the implied invitation."

The Texas case cited by the text in support of the rule is Galveston H. & S. A. Ry. Co. v. Schuessler (writ refused), 56 Texas Civ. App. 410, 120 S. W. 1147. In this case one of the

planks of a walkway over a tunnel under the track of the company in one of the streets of Houston gave way under the plaintiff, injuring her. Plaintiff supposed when she went upon the passageway that it was placed there for the use of the public and there was nothing to indicate it was not so intended or that it was not safe. She sued for damages alleging the company negligently failed to keep the walkway in safe condition for the uses and purposes for which it was constructed; that the company in constructing a passageway the obvious purpose of which was for the public to use in walking upon it, thereby impliedly invited plaintiff as a member of the public to so use it. The company answered among other things that while it had been intended that the walkway be so used for a time and that such use had been discontinued; that plaintiff when injured was a trespasser upon its property and that there was no evidence of either an express or implied invitation on its part for plaintiff to use the passageway at such time. The court speaking through Chief Justice PLEASANTS, in affirming a judgment for plaintiff rendered upon jury findings, say:

"The intention of the appellant that it should only be used by its employees would not make others who might use it trespassers, unless such intention was made known to the public in some proper way * * *."

In Texas C. Ry Co. v. Boozer, 70 Texas 530, 7 S. W. 119, a boy was injured while attempting to cross the track at a path leading from a section of the city of Denison to houses on the opposite side of the railway which was being used by the people as a passageway without any indication of objection on the part of the company. The case involved a duty not incumbent upon railroads peculiarly, but upon owners or possessors of premises which members of the public customarily entered upon. Nor was it a duty imposed by statute. Chief Justice STAYTON speaking for the Court and quoting the Supreme Court of Pennsylvania, says:

"If an owner of property has been accustomed to allow to others a permissive use of it, such as tends to produce a confident belief that the use will not be objected to, and therefore to act on the belief accordingly, he must be held to exercise his rights, in view of the circumstances, so as to not mislead others to their injury without a proper warning of his intention to recall the permission."

Avery et ux. v. City of Port Arthur et al., 266 S. W. 578, involved an accident on a bridge used in connection with a pleasure pier. The rule applied in that case is stated in Section 51 of 20 R. C. L. 55, as the rule applicable when an owner of

a building by implication invites or induces others to go thereon.

In Hamilton v. Texas & Pac. Ry. Co., 64 Texas 251, 53 Am. Rep. 756, the Court held it to be the railway company's duty to use proper care to provide and maintain safe approaches to its stations and safe platforms, and was liable for injuries arising from negligence in this respect not only to passengers but also to those on the premises for the purpose of welcoming or bidding farewell to passengers.

It appears in Texas & Pac. Ry. Co. v. Best, 66 Texas 116, 18 S. W. 224, that Best went to the depot of the Texas & Pacific Railway Company to meet a friend whom he was expecting to arrive on an incoming train, with the intention of taking pasage on the train if his friend was on it. He was injured on account of the defective condition of the platform. The Court say:

"The plaintiff was not a trespasser or an idle wanderer. He was there by appointment with one supposed to be on defendant's train, with a view of becoming himself a passenger, if the appointment was met. If his friend had been on the train, and the plaintiff had taken passage, he would then have entered the premises by right. It can not be that the character of his entry is held in abeyance to be wrongful ab initio in one event, and, from the beginning, rightful in another. He was there to become a passenger in a stated contingency, ascertainable nowhere else. If he acted in good faith and not upon a mere pretense, he had the right to be upon the platform and there receive the protection of ordinary care. The charge requested by the defendant, presenting the plaintiff as a trespasser or vagrant as to defendant, was properly refused."

From what has been stated it appears to be settled in this State that one in possession of premises is under a duty to exercise ordinary care to make them safe for the use of members of the public coming thereon in good faith by invitation or inducement either expressed or implied on his part. Certainly this is true when a discontinued approach to his premises carries no notice of such discontinuance, or of an unsafe condition thereon known to the owner.

The jury found Wheeler knew of the unsafe condition, and that Kallum did not, and could not have known it by the exercise of ordinary care. It further found Wheeler did not use ordinary care either to keep the passageway safe, or to provide proper warning with respect thereto. Having provided this means for entry into the office he expected it to be so used. It was so used for many years, and until the office became vacant. Since he provided it for such use he must as a matter of law be held to have anticipated it might be so used after the vacancy

occurred by some one believing the office was still occupied, unless a contrary intention on his part was made manifest to prospective users. He did nothing to make manifest such intention. He barred the door on the inside of the office so that it would not open, with a device that made no change in outside appearances, thus leaving the public, or such members of it who might honestly believe they had occasion to enter the office, in the confident belief after the vacancy occurred that the passageway was available for use as before.

The issues relating to negligence on the part of the respective parties, and of damages, were submitted to the jury. No complaint is made by Wheeler as to the manner of submission. His complaint is that the trial court did not instruct a verdict in his favor. The trial court did not err in submitting the issues or in rendering judgment in accordance with the jury findings.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion adopted by the Supreme Court, February 3, 1937.

Rehearing overruled March 3, 1937.