ELLA JO CARLISLE, BY NEXT FRIEND, W. J. CARLISLE V.
J. WEINGARTEN, INCORPORATED.

No. 7504. Decided June 4, 1941.
Rehearing overruled July 9, 1941.
(152 S. W., 2d Series, 1073.)

*W. H. Hanson* and *B. C. Johnson*, both of Houston, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that

plaintiff was not an invitee, but a mere licensee to whom defendant owed no duty. Kallum v. Wheeler, 129 Texas 74, 101 S. W. (2d) 225; Gulf Prod. Co. v. Quisenberry, 128 Texas 347, 97 S. W. (2d) 166; 45 C. J. 811.

*Wood, Morrow, Gresham & McCorduodale,* of Houston, for defendant in error.

The Court of Civil Appeals did not hold that the child was using the premises in accordance with the intention, design and use to which the premises were adapted; but held that the child was taken to the store by the mother because "she had no one at home with whom to leave the children." Cowart v. Meeks, 131 Texas 36, 111 S. W. (2d) 1105; Hamilton v. Texas & Pac. Ry. Co. 64 Texas 251; Texas Pac. C. & O. Co. v. Bridges, 110 S. W. (2d) 1248.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

The plaintiff, Ella Jo Carlisle, a minor, went with her mother to defendant's grocery store, and while there fell over a box of groceries that had been left in the aisle by the defendant's employee, and was injured thereby. She brought suit by next friend against the defendant, J. Wintergarten, Inc., a corporation, for damages for the injuries sustained by her. The trial court concluded that since plaintiff had not entered the store as a prospective purchaser she was a mere licensee, and since defendant's employee had not willfully or wantonly injured her, the defendant was not liable. Hence a verdict was instructed for the defendant. The Court of Civil Appeals affirmed the judgment of the trial court. 120 S. W. (2d) 886.

1 It is settled by the law of this State that if the plaintiff was on the premises as an invitee, it was the defendant's duty to exercise ordinary care to keep its premises in a reasonably safe condition, so that the plaintiff would not be injured; and that if the defendant failed so to do, it would be liable for the damages proximately caused thereby. Kallum v. Wheeler, 129 Texas 74, 101 S. W. (2d) 225. On the other hand, if plaintiff was on the premises merely as a licensee, the only duty that the defendant owed her was not to injure her willfully, wantonly, or through gross negligence. Galveston Oil

Co. v. Morton, 70 Texas 400, 7 S. W. 756, 8 Am. St. Rep. 611; Dobbins v. Missouri, K. & T. Ry. Co., 91 Texas 60, 41 S. W. 62, 38 L. R. A. 573, 66 Am. St. Rep. 856.

It is not contended that the evidence raises any issue of wilfullness, wantonness, or gross negligence on the part of defendant's employee. Consequently, the material question to be determined is whether plaintiff was on the premises of the defendant as an invitee or as a mere licensee.

There was evidence sufficient to support the following facts: On the occasion that the plaintiff received her injuries, and for several years prior thereto, the defendant was conducting, and had conducted, a retail store in the city of Houston. In such store groceries and other merchandise were sold to the general public. It was operated on what is generally known as the cash and carry plan. The general public, including many women, traded in the store. It was customary for such customers—especially the women—to bring their children along with them to the store. The defendant offered no objections to this practice. On the occasion in question, Mrs. Carlisle, the mother of the plaintiff, went into the defendant's store to purchase a bill of groceries. She was accompanied by the plaintiff, then eight years of age, and by a small son about six years of age. Mrs. Carlisle walked along one of the aisles of the store, selecting goods which she expected to purchase. Plaintiff followed along behind her. While doing so the plaintiff fell over or across a pasteboard box full of canned goods, which had been left in the aisle by one of the defendant's employees, and was seriously injured. There was sufficient evidence to justify a finding that defendant's employee was negligent in leaving the box of groceries in the aisle. The plaintiff was not in the store to make a purchase, but was there solely because her mother carried her there. Her mother carried her and her brother to the store because she did not have anyone else to leave the childen with at home. Mrs. Carlisle had been trading at the store about three years, and had been in the habit of taking the children to the store with her on such occasions. The servants and employees of the defendant knew this, and offered no objection. They also knew that the children were with Mrs. Carlisle in the store on the occasion in question.

The conclusion of the trial court and the Court of Civil Appeals that the plaintiff was a mere licensee, and not an invitee, was based on the fact that at the time plaintiff entered the premises she had no intention to purchase any of the defendant's merchandise. There are authorities which support this contention and hold that where a child of tender age accompanies its parents to a store, without any intention on the part of the child to make a purchase, such child, as a matter of law, is a mere licensee, and not an invitee. Petree v. Davidson-Paxon-Stokes Co. 30 Ga. App. 490, 118 S. E. 697; Fleckenstein v. Great A. & P. Co., 91 N. J. 145, 102 Atl. 700, L. R. A. 1918C, 179; Mosher v. Anton G. Hanson Co. 193 Minn. 115, 258 N. W. 158.

**2** We think, however, that it is too strict a construction to say that the status of such a child depends entirely on whether it entered the premises with the intention of purchasing some of defendant's merchandise. Whether it intended to make a purchase is not the essential fact to be considered in determining whether it was an invitee or a mere licensee. The most essential factor to be considered in determining this issue is whether the premises were public or private. If one uses his premises for private purposes, he has no reason to expect visitors other than those especially invited by him; and hence is under no obligation to keep his premises in a safe condition for the protection of those who may enter thereon without his invitation. It may be more convenient for him and those who live and work thereon to allow the premises to remain in a condition that would be unsafe as to strangers. Under such circumstances, strangers having no business thereon of interest to the owner have no right to demand that such owner keep his premises in such condition that they may enter thereon in safety at their will. On the other hand, one who maintains a merchandise establishment, or other public place, to which, by reason of the business so conducted thereon, the public is impliedly invited to enter, necessarily expects visitors at all times. He knows that strangers may enter his place of business at any time, under the belief that, as members of the public, they have an implied invitation to so enter and inspect his merchandise, even though they do not then have a present intention to make a purchase. Since he knows that strangers may so enter his premises, he owes those who may so enter the duty to exercise ordinary care to see that the premises are in a reasonably safe condition for their protection. It would

not be a very humanitarian doctrine to say that a merchant could thus impliedly invite the public to his store, but that he was under the duty of exercising ordinary care for the safety only of those who had an intention of buying his merchandise; and that as to others who accompanied their friends thereon, and especially children of tender years, he could with impunity allow the existence of hidden and concealed defects that might bring about their injury, so long as it could not be said that he had wilfully injured them or was guilty of gross negligence.

In the case of Sweeny v. Old Colony R. R. Co., 10 Allen (Mass.) 368, 87 Amer. Dec. 644, 648, in discussing the obligation of a shop keeper in this respect it is said: "The general rule or principle applicable to this class of cases is, that an owner or occupant is bound to keep his premises in a safe and suitable condition for those who come upon and pass over them, using due care, if he has held out any invitation, allurement, or inducement, either express or implied, by which they have been led to enter thereon. A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner or person in possession to provide against the danger of accident. The gist of the liability consists in the fact that the person injured did not act merely for his own convenience and pleasure, and from motives to which no act or sign of the owner or occupant contributed, but that he entered the premises because he was led to believe that they were intended to be used by visitors or passengers, and that such use was not only acquiesced in by the owner or person in possession and control of the premises, but that it was in accordance with the intention and design with which the way or place was adapted and prepared or allowed to be so used. The true distinction is this: A mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liability; but if he directly or by implication induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for such use, and for a breach of this obligation he is liable in damages to a person injured thereby."

In the recent case of Kallum v. Wheeler, 129 Texas 74, 101 S. W. (2d) 255, this Court announced the following rule: "It appears to be settled in this state that one in possession

of premises is under a duty to exercise ordinary care to make them safe for the use of members of the public coming thereon in good faith by invitation or inducement either expressed or implied on his part."

In Restatement of the Law of Torts, page 898, section 332, subsection (b), in discussing factors important in the determination of whether a person entering the premises of another is an invitee or business visitor, and entitled to protection as such, it is said: "In determining whether a particular person is a business visitor of a possessor of land, the important thing is the desire or willingness to receive that person which a reasonable man would understand as expressed by the words or other conduct of the possessor. It is immaterial that the person is one whom the possessor is not willing to receive as a business visitor if the possessor's words or other conduct are understood, and would be understood by a reasonable man, as indicating the possessor's willingness. The nature of the use to which the possessor puts his land is often sufficient to express to the reasonable understanding of the public or classes or members thereof a willingness or unwillingness to receive them. Thus, the fact that a building is used as a shop gives the public reason to believe that the shopkeeper desires them to enter or is willing to permit their entrance not only for the purpose of buying but also for the purpose of passing through the shop. This is so because shopkeepers as a class regard the presence of the public for any of these purposes as tending to increase their business. * * *

"(c) It is not necessary that the visitor's purpose be to enter into immediate business dealings with the possessor. The benefit to the possessor may be indirect and in the future. Thus, those who enter a shop with no present purpose of buying but merely to look at the goods displayed, are business visitors of the shop. * * *" See Also 20 R. C. L., pp. 55-66; 45 C. J. 815.

On the question of the obligation of the owner of premises to children of tender years, or others, who accompany prospective purchasers on to the premises, the same authority says: "(d) It is not necessary that the visitor should himself be upon the land for the purpose of the possessor's business. The visit may be for the convenience or arise out of the necessities of others who are themselves upon the land for such a purpose.

\* \* \* So too, a child taken by a mother or nurse to a shop is a business visitor; and this is so irrespective of whether it is necessary for the customer to take the child with her in order to visit the shop." See also Grogan v. O'Keefe's, Inc., 267 Mass. 189, 166 N. E. 721; Howlett v. Dorchester Trust Co., 256 Mass. 544, 152 N. E. 895; Gulf Refining Co. v. Moody, 172 Miss. 377, 160 So. 559.

**3** It is a well known fact that merchants, and especially grocerymen, impliedly invite the public to visit their stores and inspect their merchandise. This is done with the hope of obtaining new customers. It is also well known that the women are the largest purchasers of groceries, and that frequently they take their small children with them to the store. In the instant case the evidence shows that it was customary for children to accompany their parents to the store, and that the defendant offered no objection thereto. In view of this evidence and the jury's common knowledge of the manner in which large grocery stores, such as this one, are conducted, we think there was evidence from which the jury could have inferred an implied invitation for the mother to bring the child to the store with her, and that by reason thereof the defendant was under obligation to extend to the child the protection of an invitee.

The judgments of the trial court and of the Court of Civil Appeals are reversed, and the cause is remanded to the trial court for another trial.

Opinion delivered June 4, 1941.

Rehearing overruled July 9, 1941.