**BOHN BROS. et al. v. TURNER et al.**

No. 9452.

Court of Civil Appeals of Texas. Austin.

July 19, 1944.

Rehearing Denied Sept. 27, 1944.

Wood & Wood and Coleman Gay, all of Austin, for appellants.

Hornsby, Hornsby & Kirk, of Austin, for appellees.

BLAIR, Justice.

Appellees, the seven children and only heirs of Mrs. Mary Anne Gray, deceased, sued appellants, Bohn Brothers, a partnership, and its members, for damages for her death, which occurred when she fell down the basement stairs in appellants' store. The accident happened when she was seeking a rest room in the rear of the store where appellants' employees had directed her to go. About fifteen minutes later she was found unconscious lying at the foot of the basement stairs, and she died three hours later without having regained consciousness. It was alleged and the jury found that appellants were negligent in failing to have the door to the basement stairs locked or guarded; in failing to have a receiving room for merchandise, through which she had to pass to reach the rest room, sufficiently lighted; in maintaining the basement stairs in a dangerous condition; and in failing to warn her of the dangerous condition of the stairs. The jury also found that each of such acts of negligence was a proximate cause of the death of Mrs. Gray. Upon these and other findings judgment was rendered for $2,369, of which the jury awarded $1,500 to Sebe Gray, the unmarried daughter, $500 to Mrs. Ada Gray Turner, a widowed daughter, and $369 as reasonable and necessary ambulance, hospital and funeral expenses, and for a tombstone to the grave of the deceased.

The first five points of appellants present the contentions that the evidence is insufficient to support either of the alleged acts of negligence found by the jury, or the jury's findings that each of such acts of negligence was a proximate cause of the death of Mrs. Gray; and that the evidence as a matter of law showed her own negligence caused her death. Neither contention is sustained.

The store fronts west, has a ground floor and a basement used for the heating plant. A room for receiving merchandise in the rear of the store is twelve feet from west to east, eight feet from north to south, and eight feet high. It is reached from the store through an aisle 5½ feet wide between shelves or cabinets, and thence through a door in the west wall of the room, which door is kept open, or was open at the time of the accident. This room has a door in the north wall to the basement stairs, and a door in the south wall to the rest room, which is used by the public patronizing or going in the store. Double doors in the east wall open to the public alley, and through which merchandise is received. All of these doors were closed at the time of the accident, except the entrance door, which was fully opened back against the north wall of the room. Neither door was marked nor displayed any sign, notice or warning as to its use or purpose, and each door was of dark or walnut color. The door to the stair and the door to the rest room were similar in size and appearance. The door to the basement stairs was not marked, locked, nor guarded. It opened to the right, over the landing or top tread of the stairs, which turned immediately down to the left, and were very steep. The landing or top tread was a continuation of the floor of the receiving room. A piece three-fourths of an inch wide was split off the edge of the landing next to the stairs from the doorfacing and out to about midway of the landing. The door would not fully open because of a metal fuse box constructed on the opposite wall of the stairs. It opened only two feet and eleven inches from the door facing out to the farthest point the door would open, thus making the landing

or top tread wedge shape with the point of the wedge, or narrowest part of the landing or top tread, at the outer edge of the open door. A plat and photograph of the door and landing or top tread of the stairs show that if a person should step through the door to the landing and try to close the door, the person would have to step down at least one step to do so. The door was closed when Mrs. Gray was discovered lying at the foot of the stairway in the basement. The stair steps were walled in on both sides down two inches past the fourth step, but the remaining eight steps were open on one side and had no handrail or guard.

The receiving room had an electric ceiling light, which was not burning at the time of the accident. A witness testified that a person could see to get about in the receiving room without the artificial light, but that it was not well lighted by the windows. The basement had two electric ceiling lights burning at the time of the accident, but the rays of these lights do not reflect on the stairs down to the fourth step from the top, because the stairs are walled in down to this point on both sides.

Immediately before the accident Mrs. Gray, her daughter Sebe, and a friend, Miss Wolfenbarger, were together in the store. Mrs. Gray left her companions where they were looking at some merchandise in the men's department on the north side of the store, and asked a saleslady in the south part and near the front of the store where the rest room was, and was told by her "that there was one in the back, and that she could go back there and turn to the right." Mrs. Gray proceeded eastward along the counter near the south wall of the store to within about 23 or 24 feet of the door to the receiving room, at which point she asked another saleslady where the rest room was, and was told by her "through the door and to the right," which instruction was accompanied by a motion of the right hand of the saleslady who was facing north, intending, according to her statement, to thereby indicate that the rest room was through the receiving room door and to the right after entering the room. Mrs. Gray, however, was facing south and when she turned to enter the aisle between the shelves she was facing and going north, and from this position and for a part of the way in the aisle the door leading to the basement was visible and was to her right. The door to the receiving room was opened back against the wall at the time. After entering the receiving room the rest room door was to the right, but before turning to the right a person would have to go one foot and ten inches, the width of a table, then to the right four feet and six inches, the length of the table, and then to the rest room door. Some fifteen minutes after Mrs. Gray left the saleslady, the daughter and friend asked the saleslady if she had seen an elderly lady, and she told them that such lady had gone to the rest room. The saleslady then went to the rest room, and not finding Mrs. Gray there she opened the door to the basement stairs, and looking down saw Mrs. Gray lying at the foot of the stairs on the basement floor. A doctor was called and arrived in about ten minutes. Mrs. Gray was taken to a hospital by ambulance, where she died about three hours later.

In the main the foregoing facts are undisputed. No one saw the accident, and since Mrs. Gray died without having regained consciousness the jury had to find from the circumstances, or from reasonable inference from the facts and circumstances proved, how Mrs. Gray met her death, and to further find whether any negligent act or omission of appellants was a proximate cause of her death. From the place Mrs. Gray was standing when she received the last instruction to go "through the door and to the right," she was either in the aisle between the shelves and counter, or she would have to go through the aisle or opening between the shelves and cabinets to reach the receiving room and then the rest room. In either event she had to first go north to reach the receiving room before turning to the right. From her position when she received the instruction, or from her position in going through the aisle, the door to the rest room was not visible, but the door to the basement was visible and was the nearest door visible, and was then to her right. The west door to the receiving room was opened back against the north wall. Whether the door itself could be seen from the position of Mrs. Gray when she received her instruction was not shown. From these facts and circumstances the jury could have reasonably inferred that Mrs. Gray first passed through the aisle, passed the open door opening into the receiving room, and then "through" the door to the basement stairs, believing it to be the door "through" which she was instructed to go to the rest room.

Having entered the door and believing it to be the rest room, the natural thing for her to do was to try to close it, and because of the physical and dangerous condition hereinabove described the jury could have reasonably inferred and found that she lost her balance and was precipitated or fell down the basement stairs, receiving the injuries from which she died about three hours later.

The rest room door was not marked. The basement door to the stairs was not locked nor guarded, and contained no mark, sign, notice, or warning that the public was not to use it, nor of the dangerous conditions which would confront a stranger or the public with respect to the landing and stairs, if attempted to be, or mistakenly attempted to be, used. These physical facts are not disputed, and fully support the findings of the jury that appellants negligently failed to lock or guard the door, and that such negligence was a proximate cause of the death of Mrs. Gray. She was expressly authorized and invited to go in the receiving room, and to go "through" a door to the right into the rest room. The facts are fully sufficient to show that she thought the door to the basement stairs was the one she had been directed to go through to the rest room, or that she mistakenly entered the door to the basement stairs for the door to the rest room, which she was seeking. The liability for injury to a person on business premises in consequence of passing through a wrong doorway is generally stated in 20 A.L.R. 1147, as follows: "Where a store, office building, or similar business establishment to which the public is impliedly invited to resort has a door leading to a cellar, elevator shaft, or other dangerous place, which is left unfastened, and which from its location and appearance may be mistaken for a door which a member of the public on the premises is entitled to use, the proprietor is liable to a person who by mistake passes through that door and is injured."

This authority and 42 A.L.R. 1098, cite many cases which discuss the quoted rule and apply it to instances where persons were injured by falling down basement stairs while looking for a rest room, and permitted to recover under similar or analogous facts to the instant case. We cite these cases and quote from one of them, View v. Metropolitan West Side Elev. R. Co., 166 Ill.App. 154, wherein a person undertook to make use of a toilet room and instead entered into a door opening into a basement, which was not locked, and even though the toilet door had "Men" marked on it, the court held: "The basement door of appellant not being marked in any way, so as to disclose the danger behind it, it was very necessary to keep it locked or otherwise secured, so that it could not be easily opened by patrons of the place, and we think the jury were warranted under the evidence in finding the appellant guilty of negligence in failing to so lock or secure it."

Several Texas cases apply the quoted rule under analogous or similar facts to those in the instant case, among them are Kallum v. Wheeler, 129 Tex. 74, 101 S.W. 2d 225; Book v. Heath, Tex.Civ.App., 181 S.W. 491; and Montgomery v. Allis-Chalmers Mfg. Co., Tex.Civ.App., 164 S. W.2d 556, 557, writ refused, wherein a woman entering a business house and desiring to use the rest room, entered instead an unmarked and unlocked door leading to the basement believing it to be the rest room, and on entering, the landing being unlighted, fell down the basement stairs and was injured, the court held as follows: " * * * we are of opinion that, whether or not, in the exercise of reasonable care, the defendant corporation should have anticipated that a person situated as was plaintiff's wife, minus the named precautionary measures, would likely mistake and enter the unlocked and unnamed door under the belief that it opened into the ladies' restroom, was a question of fact and not one of law; * * *."

The contention is not sustained that since Mrs. Gray had no implied invitation to enter the basement door, she is not a licensee on such portion of the premises, and appellants owed her no duty except not to injure her wilfully or wantonly, or through gross negligence. This rule has no application to the instant case. Mrs. Gray was expressly invited to seek and use the rest room, and appellants owed her the duty to exercise ordinary care to so mark, lock or guard the basement door and the dangers behind, that she in the exercise of ordinary care would not likely mistake and enter such door under the belief that it opened into the rest room she was seeking. She did not lose her status as a licensee or invitee merely because by mistake she entered or made use of the wrong door. The general rule or test in that respect is stat-

ed in Texaco Country Club v. Wade, Tex. Civ.App., 163 S.W.2d 219, 221, as follows: "The test of whether one on premises used for public purposes is an invitee at the exact place of injury seems to be whether the owner of the premises ought to have anticipated the presence of a member of the public at this point on the portion of the premises devoted to public use. It is not essential that the owner of the premises should have foreseen the precise injury to any particular individual, but merely that some like injury might, and probably would, result to someone lawfully on the premises. Texas Public Service Co. v. Armstrong, Tex.Civ.App., 37 S.W.2d 294, error refused." See also Southwestern Portland Cement Co. v. Bustillos, Tex.Civ.App., 216 S.W. 268.

■■ Nor is the contention tenable that because the evidence did not specifically show how Mrs. Gray happened to open and enter the door to the basement stairs, or what caused her to fall down the stairs, no negligence on the part of appellants was proved as a matter of law. Negligence like any other fact may be proved by circumstantial evidence. The jury could have reasonably inferred that Mrs. Gray opened and entered the door to the basement stairs under the mistaken belief that it opened into the rest room she was seeking, because the basement door was not marked, locked nor guarded, and because it contained no notice or warning that the stairs were behind it. In the absence of these precautionary measures, a condition was shown to exist which might or would likely cause the basement door to be mistaken for the rest room door which Mrs. Gray had been instructed to "go "through." Thus the facts and circumstances proved showed a cause from which an accident might occur, and that an accident of that particular character did occur, and in consequence the jury was warranted in inferring that such cause brought about such result. The following Supreme Court cases sustain this rule: Houston E. & W. T. R. Co. v. Boone, 105 Tex. 188, 146 S. W. 533; Bock v. Fellman Dry Goods Co., Tex.Com.App., 212 S.W. 635; Burlington-Rock Island R. Co. v. Ellison, 140 Tex. 353, 167 S.W.2d 723; Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481; Lockley v. Page, Tex.Sup., 180 S.W.2d 616. And the cases also answer adversely the contention that since the death of Mrs. Gray under the evidence might have hap-

pened in several ways, it did not show that it happened in the way the trial court held the jury had the right to infer that it did happen, to the exclusion of any other way. Such a contention was overruled in the Burlington Rock Island R. Co. case, as follows [140, Tex. 353, 167 S.W.2d 726]: "These plaintiffs were not required to exclude the probability that the accident might have occurred in some other way. To so hold would impose upon them the burden of establishing their case beyond a reasonable doubt. The were only required to convince the jury by a fair preponderance of the evidence that the accident resulted from the negligence of the defendant. Bock v. Fellman Dry Goods Co., Tex.Com.App., 212 S.W. 635, 636, supra."

■ Under the facts and circumstances hereinabove detailed, the foregoing authorities also sustain the findings of the jury that the negligence of appellants in failing to mark, lock or guard the basement door to the stairs was a proximate cause of Mrs. Gray's death. They also sustain the jury's findings that the maintenance of the stairs in the dangerous condition shown, and the failure to warn her of such dangerous condition was each a proximate cause of her death. Thus the facts and circumstances showed a cause or causes which might produce the accident, that the accident occurred, and the jury could reasonably infer that the accident resulted from such cause or causes, which cause or causes resulted from the negligence of appellants as found by the jury.

Nor is the contention sustained that the evidence showed as a matter of law that Mrs. Gray was guilty of contributory negligence. Specifically appellants contend that the "difficulty about arguing this case is that no one knows what actually happened to cause the injuries to Mrs. Gray. It is possible that she opened the basement door thinking that it was the door to the rest room and catapulted into the basement upon opening the door; or that she had a fainting spell or otherwise lost her balance after stepping on the landing and was thereby caused to fall; or that she opened the door to the basement with the knowledge that it was not the door to the rest room; that she attempted to walk down the basement stairs after stepping upon the landing. Under any theory, however, it is submitted that she was guilty of contributory negligence."

The jury found that Mrs. Gray was not guilty of contributory negligence; and the evidence fully supports that finding. It is true that no one saw the accident and Mrs. Gray died without regaining consciousness, but as said in the Boaz case, "the presumption is that the deceased exercised ordinary care for his (her) own safety, and in order for the respondents (appellants) to be entitled to have it ruled that, as a matter of law he (she) failed to do so, the burden rested upon them to overcome that presumption by competent evidence so conclusively that reasonable minds could not differ with respect thereto." Appellants made no such proof. There was some testimony that an empty cardboard box, twelve inches high, occupied most of the space in front of the basement door, but two witnesses, both of whom went to the stairway door before the doctor arrived, one of them going down the stairs to where Mrs. Gray was found, testified that the box was not there at that time. This matter as well as the matter of whether she was negligent in opening the basement door under the mistaken belief that it was the rest room door, each related to the issue of contributory negligence on the part of Mrs. Gray, and the foregoing facts fully sustain the jury's finding that she was not guilty of contributory negligence because of either of such matters or acts.

By their sixth point appellants contend that the court erred in refusing to submit the following special issue relating to contributory negligence: "Do you find from a preponderance of the evidence that Mrs. Mary Anne Gray mistook the door to the basement for the door to the rest room? Answer 'Yes' or 'No'."

The court submitted the contributory negligence issues as follows:

"Special Issue No. 16: Do you find from a preponderance of the evidence that Mrs. Mary Anne Gray, in entering the door to the basement stairs was guilty of negligence? Answer 'Yes' or 'No'."

"Special Issue No. 17: Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of her death? Answer 'Yes' or 'No'."

These issues covered fully not only the issue relating to any question of negligence based upon Mrs. Gray's mistaking the basement door for the rest room door, but also covered the issue of whether she was negligent in not being warned by or stepping over the box which partially obstructed the door, if it were there. In fact the issue authorized the jury to consider any facts adduced tending to show negligence on the part of the deceased. Schumacher Co. v. Holcomb, Tex.Sup., 177 S.W.2d 951.

The remaining point is that the court erred in allowing appellees to recover for the amount of the hospital and funeral expenses. Mrs. Gray never regained consciousness after falling down the stairs, and her children incurred various expenses and paid them after her death partly from money received by them from her estate and partly from their own funds. No administration was had of Mrs. Gray's estate and none was necessary. The children sued as individuals as well as the sole surviving heirs of Mrs. Gray. The expenses were incurred on account of the negligence of appellants causing the death of the deceased. Such of the expenses as were paid by the children were recoverable by them and all of such expenses were recoverable by the estate of Mrs. Gray, and of course are recoverable by her children suing as the only heirs of Mrs. Gray. Armstrong v. Marshall, Tex.Civ.App., 146 S.W.2d 250, writ dismissed; South Texas Coaches v. Eastland, Tex.Civ.App., 101 S.W.2d 878, writ dismissed, and cases therein cited.

The judgment of the trial court is affirmed.

Affirmed.