For the error mentioned, the judgment is reversed and the cause remanded.

Opinion approved by the court.

DAWES et ux. v. J. C. PENNEY & CO., Inc.

No. 2938.

Court of Civil Appeals of Texas. Waco.

Feb. 1, 1951.

Rehearing Denied March 1, 1951.

Hubbard & Hubbard, McCampbell, Wood & Kirkham, Dean B. Kirkham, Corpus Christi, for appellants.

Kemp, Lewright, Dyer & Sorrell, Cecil D. Redford, Corpus Christi, for appellee.

HALE, Justice.

Appellants, Donald Dawes and wife, sued appellee for damages on account of personal injuries sustained by Mrs. Dawes on April 20, 1949, when she slipped and fell on the terrazzo-tiled entrance way to Penney's department store at Corpus Christi, Texas, while she was attempting to enter the store. The suit was grounded upon allegations of actionable negligence on the part of appellee in failing to maintain the entrance way into its store in a reasonably safe condition, the alleged negligence being in substance as follows: in having constructed the entrance way into its store of terrazzo tile, in maintaining the same on the occasion complained of in a slippery and dangerous condition, in failing to put some chemical or material, such as dry oil, sand or a perforated rubber mat upon the tile floor so as to keep the same from becoming slippery in wet weather, and in failing to keep the tile free from the accumulation of mud and water. Appellee answered with a general denial and pleas of contributory negligence on the part of Mrs. Dawes in that she failed to keep a proper lookout for her own safety, she placed her arms over her head so as partially to obscure her vision and she was running into the entrance way when she fell. Appellee also alleged that the conditions of which appellants complained were equally as noticeable, open and obvious to Mrs. Dawes as to appellee and that Mrs. Dawes, in running into the entrance way

in the manner in which she did, assumed the risk of such dangers, if any, as were incident to her attempt to enter the store on the occasion in question.

The case was tried before a jury. After both parties had introduced their evidence, appellee duly presented its motion for a directed verdict in its favor. The specific grounds upon which the motion was based included the contentions, among others, that the evidence as a whole did not raise any issuable fact for the determination of the jury in that (1) there was no evidence of actionable negligence on the part of appellee and (2) the undisputed evidence conclusively established the affirmative defenses alleged by appellee. Upon hearing the motion the court below sustained the same, withdrew the case from the jury and rendered judgment that appellants take nothing. Appellants duly perfected their appeal and the cause is now properly pending in this court for review upon the contention that the trial court erred in withdrawing the case from the jury.

In passing upon the asserted right of appellants to have their case submitted to the jury, we must view the evidence and all reasonable inferences and deductions that may properly be drawn therefrom in the light most favorable to their contention. City of Houston v. Chapman, 132 Tex. 442, 123 S.W.2d 652, pt. 3; McAfee v. Travis Gas Corp., 137 Tex. 314, pt. 1, 153 S.W.2d 442; Burroughs v. Smith, Tex.Civ. App., 294 S.W. 948, pts. 1, 2 and 3, er. ref. When thus viewed, if the evidence showed or tended to show that appellee was negligent in any of the particulars alleged by appellants and that such negligence, if any, was a proximate cause of the damages sued for, then the judgment appealed from should be reversed unless the undisputed evidence showed conclusively that Mrs. Dawes was guilty of contributory negligence in one or more of the particulars alleged by appellee.

Mrs. Dawes testified that her purpose in entering the store at the time of her injury was to deliver a package and to purchase some merchandise. Her testimony was sufficient to warrant the conclusion that she sustained toward appellee the relationship of an invitee at that time. Consequently, under the settled law of this State appellee owed to her the legal duty of exercising ordinary care to maintain the entrance way into its store in a reasonably safe condition for her use as an invitee so that she would not be injured thereby. If there was any competent, admissible evidence tending to show that appellee failed to discharge the duty thus imposed upon it by law and that such failure, if any, was a proximate cause of the injuries and damages complained of, then such evidence was sufficient to raise the general issue of negligence on the part of appellee. Kallum v. Wheeler, 129 Tex. 74, 101 S.W.2d 225; Carlisle v. J. Weingarten, Inc., 137 Tex. 220, 152 S.W.2d 1073; Walgreen-Texas Co. v. Shivers, 137 Tex. 493, 154 S.W.2d 625.

The evidence shows that the entrance way to appellee's store was a recessed, roofed area extending from the south margin of the cement sidewalk at the front of the building to the display windows and glass doors in the north entrance into the store. The floor of the entrance way was constructed of terrazzo tile and was flush with the sidewalk. The roof over the entrance was about 17 feet above the floor level. The entrance was open to the north and with any appreciable amount of rainfall and a little wind from that direction the entire tile floor would become wet and more slippery than it would be when dry. The building was a new structure, the store having been opened for business on March 31, 1949. On several occasions prior to April 20, 1949, the entrance way had become wet and slippery as the result of rainfall and appellee, through its store manager and porter, had notice that one or more persons had slipped and fallen on the entrance way when it was wet. Rain was falling at the time when Mrs. Dawes was injured at about 1:15 P.M. on April 20, 1949, and had been falling in substantial quantities at intervals for more than twenty-four hours prior thereto.

The evidence indicates that appellee's porter was charged with the duty of keep-

ing the entrance way into the store in a reasonably safe condition for use by members of the public. The store manager testified in substance that it was understood with the porter that whenever it rained he was to keep the water pushed out of the entrance "as it collects in there", and that "every time it stopped raining he would mop that up, as I recollect. In other words, we tried to keep it as dry as we could to prevent it being tracked inside." The porter testified that he was instructed with reference to the entrance way to "keep the water pushed off during the time it rained." He also testified that he was instructed to make use of rubber matting by putting it down in the entrance way when rain was falling; that he put the matting down during the rain on the first rainy day after the store was opened for business; that he kept the mats in the back of the store when it was not raining, and when it was raining he would put them out on the entrance way; but that he did not remember whether or not he pushed any water off the entrance or put out the mats at any time on April 20, 1949, and that he did not see Mrs. Dawes fall. In response to a question as to whether or not the mats were used in part for the purpose of keeping "the store clean inside rather than anything else, to keep it from tracking in mud and stuff", the witness answered: "Well, probably so, that would probably keep mud from tracking in, maybe. I know we used it. I was instructed to use it."

Mrs. Dawes testified that her husband drove her from their home to the store on the afternoon of April 20th, in company with W. R. Robinson, and double-parked their car directly in front of the store for her to alight. On direct examination her counsel asked her to state, in her own words, what she did and what happened to her when she got out of the car to go into appellee's store, and, in response thereto, she answered: "Well, Mr. Robinson let me out, as he said yesterday, I rather slid over the top in order to keep him from getting out of the car, and when I did, I stepped in what appeared, noticed a pool of water approximately two feet from the curb. Naturally, I didn't want to get my feet wet so I checked up so I could cross the sidewalk, and what happened then I don't know. I remember sliding, losing my footing, and I came to in the doctor's office." Mr. Robinson testified that he saw Mrs. Dawes slip and fall in the entrance way as she was about to enter the left door; that she slid into the door and fell backwards and was apparently rendered unconscious; that he went to her aid and as he was trying to get her up he slipped and fell almost to his knees. "Q. How many times did you slide, Mr. Robinson? A. Well, I was just sliding into the window. Q. What was—as you observed it, what was the condition of the floor on that part of the approach way? A. It was awfully slick, and there was mud and stuff and lots of water on it." Mr. Dawes testified that he picked up the package which his wife was carrying at the time she fell, and the condition of the tile floor "was very slick. I would say it compared to almost ice. Q. What was on it? A. Well, it was just muddy water." Mrs. Lota Morgan testified that when Mrs. Dawes was returned to her home immediately after her injury, her clothes were wet and "muddy all over. * * * She had mud in her hair. I had to comb her hair out, big clots of mud in it and blood."

On cross examination, Mrs. Dawes testified in substance that she knew prior to the time she attempted to enter appellee's store that the entrance way was covered with tile, that it was smoother and slicker than the concrete sidewalk and that with rain falling it "could not help but be slippery." "Q. Alright. Now, so knowing it was slippery as you got out of the car you ran across there, didn't you? A. No, I don't think anyone that knew it was slippery would run, no sir." She also testified this was the first time she had ever been on the entrance way when it was wet and that she did not know prior to going into the entrance way that there was an accumulation of mud and water on the same. On re-direct examination she further testified as follows: "Q. Now, at the time you got out of the car

on the 20th of April, when your husband let you out, what are the facts with reference to what you knew or didn't know about the slippery condition of that approach way by never being down there when it was wet before? A. I had not the vaguest idea it would be slippery as it was."

Under the evidence before us we must assume for the purposes of this appeal that the entrance way into appellee's store, on account of its slippery condition, was somewhat hazardous for use by Mrs. Dawes at the time she went upon the same. However, appellee was not an insurer of her safety and its legal obligation to her as an invitee did not extend beyond its duty of exercising ordinary care to protect her against conditions in the entrance way which might involve an unreasonable risk to her safety, the danger of which would not be open or obvious to a person exercising ordinary care in attempting to enter the store. Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374; Marshall v. San Jacinto Bldg., Inc., Tex. Civ.App., 67 S.W.2d 372, er. ref. Ordinary care is that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances. The degree of care which an ordinarily prudent person exercises in a given situation depends to some extent upon the degree of risk or danger which is known to be attendant upon the existing circumstances. Whether or not the slippery condition of the tile entrance way when dry, or its increased slipperiness when wet from rain, involved such an unreasonable risk to the safety of Mrs. Dawes as to require appellee, in the exercise of ordinary care, to protect her against the danger of such risk by providing rubber mats or removing the accumulation of rain water, is not of controlling effect in so far as a correct disposition of this appeal is concerned. The evidence shows that appellee actually had provided rubber mats for use in the entrance way when rain was falling and had instructed the porter to use them. The evidence is amply sufficient to show that mud and water had accumulated in the entrance way and that the rubber mats were not in use at the time when Mrs. Dawes slipped and fell.

After due consideration of all the evidence we have concluded that it was of sufficient probative force to raise fact issues with reference to actionable negligence on the part of appellee. It appears to us that the jury, if it had seen fit to do so, might have properly drawn the following inferences from the evidence as a whole, viz.: that the entrance way into appellee's store, by reason of the mud which had accumulated upon the wet tile, was not in a reasonably safe condition for the use of Mrs. Dawes at the time when she entered the same; that appellee's agents, servants and employees knew or had reasonable opportunity to know of such condition and that they did not exercise that degree of care which an ordinarily prudent person would have exercised under the same or similar circumstances to render the entrance way reasonably safe for her use, in that they failed to remove the accumulation of mud from the entrance way or to put down any of the rubber mats which had been provided for use in rainy weather; and that the danger of the risk arising from such failure was not equally as open or obvious to Mrs. Dawes or as well known to her as to the agents, servants and employees of appellee.

Furthermore, under all the evidence before us, we cannot say as a matter of law that Mrs. Dawes placed her arms over her head so as partially to obscure her vision, that she failed to keep a proper lookout for her own safety, or that she was running into or upon the entrance way when she fell; or that she knew and appreciated the full extent of the danger incident to going upon the entrance way, or that she was necessarily guilty of contributory negligence in any of the particulars alleged by appellee. In our opinion the question of contributory negligence, as well as that of primary negligence, involved ultimate fact issues which, under our legal system, should have been submitted to the discretion and conscience of the jury for determination.

Therefore, we hold that the trial court erred in withdrawing the case from the jury and rendering judgment that appellants take nothing. We think our holding is in harmony with the rules of law announced and applied in the following cases: J. Weingarten, Inc., v. Brockman, 134 Tex. 451, 135 S.W.2d 698; Walgreen-Texas Co. v. Shivers, 137 Tex. 493, 154 S.W.2d 625; Smith v. Henger, Tex.Sup., 226 S.W.2d 425; Blanks v. Southland Hotel, Tex.Sup., 229 S.W.2d 357; McCrory's Stores Corp. v. Murphy, Tex.Civ. App., 164 S.W.2d 735, er. ref. w. o. m.; Blaugrund v. Paulk, Tex.Civ.App., 203 S.W.2d 947, er. ref. n. r. e.; H. E. Butt Grocery Co. v. Johnson, Tex.Civ.App, 226 S.W.2d 501.

Accordingly, the judgment appealed from is reversed and the cause is remanded to the court below for another trial.