**D. C. THIELEPAPE et ux., Appellants,**

**v.**

**Thomas J. McELHENNEY, Appellee.**

No. 10283.

Court of Civil Appeals of Texas.

Austin.

March 9, 1955.

Rehearing Denied March 30, 1955.

Cecil C. Rotsch, John D. Coats, Austin, for appellants.

McKay & Avery, Austin, for appellee.

GRAY, Associate Justice.

Appellants, D. C. Thielepape and his wife Sarah Mae Thielepape, sued appellee for damages resulting from personal injuries sustained by Mrs. Thielepape when she was struck by a swing or glider in the reception room at appellee's office.

A jury trial was had. At the conclusion of appellant's evidence the trial court granted appellee's motion for an instructed verdict and rendered judgment that appellants take nothing.

Appellants alleged that appellee was negligent in placing the swing or glider in the reception room and in other respects connected therewith; that the damages sustained were the direct and proximate result of appellee's negligence, and further alleged the nature of the injuries sustained and the damages resulting therefrom.

Since this appeal is from a judgment rendered on an instructed verdict wherein the trial court found there was insufficient evidence to raise jury issues,

we must view the evidence most favorably to appellants and determine whether there is evidence of probative value raising jury issues.

We will first notice the undisputed evidence.

Appellee is a practicing physician and surgeon specializing in children's diseases, and is known in his profession as a Pediatrician. He had been engaged in practice and had maintained his office at the same place for some time prior to the accident in question. As a part of the office a reception or waiting room was provided where patients and their parents or attendants could wait for their turns to see appellee such time being determined by a call or notice from a nurse. Upon call or notice from the nurse the patient and usually the person accompanying the patient would go from the reception room into the examining or consultation room. Appellee's patients were children and they were usually accompanied by their mothers. The reception room was a large room furnished with tables and with chairs for children and for adults. Also there were seats by the windows which afforded a view of a yard maintained by appellee and equipped with furnishings with which children could play while waiting to see appellee or waiting for other causes. Among the furnishings in the reception room there was a glider or swing, placed there by appellee. It is described as about two or two and one half feet tall and about four feet long; it has two seats, being one at each end and facing each other; it has a floor and the chairs sit on a frame; when in operation the frame and chairs move in a forward and backward motion, that is, one moves forward while the other is moving backward. The swing or glider is designed for use by children. Appellee enjoyed an extensive practice and his reception room was generally occupied by a number of mothers and their children. On the day of the accident Mrs. Thielepape went to appellee's office in keeping with an appointment previously made to have appellee see her small child.

Mrs. Thielepape testified that prior to the day she was injured she had been to appellee's office many times to have him "take care" of her children and that prior to this day she had never seen the swing or glider in the reception room. She arrived at appellee's office about 9 o'clock a. m. with her two children, one about two and one half years of age and her younger child who was to be seen by appellee. She was also accompanied by her sister-in-law and her small son who was to be seen by appellee pursuant to an appointment. Upon her arrival Mrs. Thielepape left her older child in the yard, took her younger child into the reception room and sat down on a window seat in order to see her child in the yard. She laid her small child on the window seat beside her and waited until about 10 o'clock before she was called to see appellee. During this wait the reception room was occupied by other mothers and their children. The swing or glider was on the floor to Mrs. Thielepape's left and about two feet away from where her feet were. There was a large chair to her right and during her wait a child brought a small chair and put it in front of the large one. A child got on the glider and was swinging while another child was standing by the side of it. She testified:

"Q. Now, you observed the swing in operation. Did you observe the swing in operation any during that hour? A. Yes, sir, I noticed it.

"Q. Describe how it swung. A. It swung back and forth, oh, I would say about six, somewhere about six inches, like that, moved back and forth, and back and forth.

"Q. Back and forth about six inches? A. About six inches, yes.

"Q. All right. Now, is that the way you observed it when you were sitting there watching it? A. Yes, sir, it was."

Mrs. Thielepape said the nurse came to a door across the room from where she was sitting, called her by name and mo-

tioned with her hand for her to come in and that

"A. I picked up my diaper bag and put it on my shoulder and turned around and picked up Linda Jane and, turned on the seat and picked up the baby and put her on my shoulder and turned back to head out.

"Q. Now, just previous to you doing that, had the little swing been moved back and forth some? A. The children were swinging.

"Q. Yes. A. But not very high.

"Q. Not very high? A. No.

"Q. You saw that. All right, then, did you endeavor to go by—you say you got up, did you? A. Yes.

"Q. And did you endeavor to pass between the swing and the chair that you described? A. Yes, but I saw that the swing wasn't swinging high enough to hit me.

\* \* \* \* \* \*

"Q. Now, then, you observed the swing in the manner that you have stated? A. Yes.

"Q. What did you do then? A. I turned to get up. I noticed the swing swinging before I stood up, and then started out. I had to take a step this way and then go that way.

"Q. All right. How much did you turn to your right? To what extent with reference to the swing swinging? A. I turned on the seat to get up so that I would be able to get out—

"Q. Yes. A. —and I picked up, started to get up, I had Janey on my shoulder, I started up and I took a step, and then I was knocked down.

\* \* \* \* \* \*

"Q. Explain whether or not you went to the right sufficiently to pass it. A. Yes, I did. The swing was sitting right at my left foot, even with it. I had turned on the bench to get up, and when I did, I noticed the swing was swinging, and there was some more children standing in front of it, and there was a child in the swing, and I stood up and then started on, and I had plenty of room to get by.

\* \* \* \* \* \*

"Q. All right. Now, what happened? As you went by the swing observing it as you testified you did observe it, what happened? A. As I said before, I stood up, I took a step, and then I was struck down, and as I did, why, later I found out I had a bruised spot on my leg and also on the top of my foot.

"Q. And what struck you? A. The swing.

"Q. All right. Now, you have stated previously that you went to the right sufficient to pass the swing? A. Yes, sir.

"Q. And you state that you were struck. Explain that. A. The swing evidently swung higher than what it was to have knocked me down, because I did have plenty of room to get out.

"Q. All right. You had—then, you state you had plenty of room to get out? A. Yes.

"Q. With the swing swinging as it was? A. As it was.

"Q. And then it did swing out? A. Yes."

The extent of Mrs. Thielepape's injuries and the resulting damages were testified to.

■ At this point we think it is proper to quote the rules applicable to cases of this character as those rules are stated by our Supreme Court. In Hall v. Medical Bldg. of Houston, 151 Tex. 408, 251 S.W.2d 497, 500, the Court said:

"There is no uncertainty as to the established principles applicable to a case of this kind. The difficulty is in their application to the peculiar facts of the case. In Renfro Drug Com-

pany v. Lewis, 149 Tex. 507, 516, 235 S.W.2d 609, it is said that the owner or occupant of the premises owes to an invitee or business visitor the duty to use reasonable care to keep the premises in a reasonably safe condition so that he will not be injured. See also Carlisle v. J. Weingarten, Inc., 137 Tex. 220, 152 S.W.2d 1073; Kallum v. Wheeler, 129 Tex. 74, 101 S.W.2d 225; Walgreen-Texas Company v. Shivers, 137 Tex. 493, 154 S.W.2d 625; Blanks v. Southland Hotel, Inc., 149 Tex. 139, 229 S.W.2d 357; Restatement of the Law of Torts, Vol. 2, Sec. 343, pp. 938–944; 38 Amer.Jur., pp. 754–757, Sec. 96; 65 C.J.S., Negligence, § 45, pp. 521–532.

"The principle as generally stated is qualified by the rule that the owner or occupant of the premises does not owe to the business invitee the duty to protect him against dangerous conditions 'that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant.' 38 Amer.Jur., pp. 757–758, Sec. 97; see also Houston National Bank v. Adair, 146 Tex. 387, 390, 207 S.W.2d 374; A. C. Burton Co., Inc., v. Stasny, Tex.Civ.App., 223 S.W.2d 310, application for writ of error refused; Marshall v. San Jacinto Building, Inc., Tex.Civ.App., 67 S.W.2d 372, application for writ of error refused; 65 C.J.S., Negligence, § 50, pp. 541–545. It has been said that 'The basis of the inviter's liability for injuries sustained by the invitee on the premises rests on the owner's superior knowledge of the danger.' 65 C.J.S., Negligence, § 50, p. 543. And many cases have held that the owner or possessor is not liable for the injury to the invitee because the danger was as well known and obvious to the one as to the other. Beeville Cotton Oil Co. v. Sells, Tex.Civ.App., 84 S.W.2d 575; Ray v. St. Louis Southwestern Ry. Co., Tex.Civ.App., 289 S.W. 1030, application for writ of error refused; Hodges v. Nix, Tex.Civ.App., 225 S.W.2d 576, and the cases last above cited."

There is no evidence that prior to Mrs. Thielepape's accident any other person had sustained injuries because of the glider, neither is there any evidence that the glider is a type of furnishing generally used in reception rooms of the kind in question. There is evidence that Mrs. Thielepape was familiar with the reception room because of her prior visits there, and also with the custom of waiting to be summoned by the nurse to come into appellee's consultation or examining rooms; that on her prior visits the glider was not in the reception room; that on the day of her injuries and while waiting to be called· by the nurse she saw the glider while it was being operated by children; that she observed its operation and saw that it was being moved about six inches to the right and to the left; that she concluded she could safely pass between the glider and the chair to her right; that she attempted to so pass, was struck by the glider when it swung or was pushed into her path, and that she was injured.

Mrs. Thielepape said the glider was swung higher than she had observed it and that it struck her and caused her to fall.

Paraphrasing the language of the Court in Hall v. Medical Bldg. of Houston, supra, there is no evidence that Mrs. Thielepape knew that the glider would swing freely, or that its swing was not retarded by a properly adjusted check. She was without knowledge of the dangerous condition which she said caused her to fall.

■ From what we have already said it is reasonable to conclude that Mrs. Thielepape pursuant to her appointment with appellee, could, as was customary for patients to do, go to the reception room provided by him, seat herself on one of the provided seats and there wait to be called, and when called to have available to her a reasonably safe path for passage from her seat to the consultation or examining room. When called she selected the only

path available to her—that between the chair and the glider. She had observed both of them; she observed the glider as it was being operated at the time by children (for whom it was intended) and concluded there was sufficient room for her to pass. The element that was unknown to her was that the glider was capable of swinging or being pushed into her path.

From the standpoint of Mrs. Thielepape the facts and circumstances tend to show that while waiting to be called she observed and took note of her location and the path open for her to safely pass. We cannot say, as a matter of law, that she did not act as a reasonably careful person would have acted in the same or similar circumstances.

From the standpoint of appellee the facts and circumstances tend to show: that he placed the glider in the reception room; that it was not stationary; that it was for children to operate; that it was capable of being pushed or of swinging with a force sufficient to strike and injure a person (Mrs. Thielepape's injuries demonstrate this fact), and that the reception room was a place where many people assembled and waited to see appellee.

From these facts and circumstances it is not an unreasonable conclusion to say that appellee should have known that the glider would be operated by children to the extent of its capacity; that people would be near to the glider in the reception room, and that such glider was capable of inflicting injury by striking persons near to it. These are matters that appellee could have determined by the exercise of reasonable care to keep his premises safe for his business visitors. Whether he did use such care of course is not for us to say.

If it be argued that the evidence suggests that more than ordinary and usual force was applied to the glider by the child or children operating it at the time, this and other circumstances are elements to be considered in determining the issues of fact.

From all the facts and circumstances in evidence we cannot say that the dangerous conditions created by the glider were open, obvious and reasonably apparent to Mrs. Thielepape or that they were as well known to her as they were to appellee and thereby resolve the issues of fact. The dangerous conditions that were open, obvious and reasonably apparent to Mrs. Thielepape was passing by the glider as it was being operated in the manner she observed it. Further we think it proper to note that upon Mrs. Thielepape's arrival at appellee's office she took a seat provided by appellee and thereafter her way to appellee's examining or consultation room was narrowed by a child placing a small chair, also provided by appellee, in front of the large chair to her right. Thus when she was called to her appointment by appellee's nurse the only path open for her was between the glider and the chair. She observed this way and from her observation concluded it was safe.

It is our opinion that the trial court erred in granting an instructed verdict for which reason this cause is reversed and remanded.

Reversed and remanded.