**Bonita KNORPP, Individually and as Administratrix of The Estate Of Todd Winston Erwin, Deceased, Appellant,**

v.

**Michael HALE and Reeda Hale, Appellees.**

No. 06–98–00006–CV.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 6, 1998.

Decided Oct. 22, 1998.

---

Matt Keil, Keil & Goodson, Texarkana, AR, for appellant.

John R. Mercy, Atchley, Russell, Waldrop, Texarkana, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

Bonita Knorpp appeals from a directed verdict in a premises liability case. Knorpp contends that the trial court erred by finding her son, Todd Erwin, to be a licensee rather than an invitee at the time of his death and by rendering a directed verdict against her claim for damages.

The decedent, Todd Erwin, was killed while cutting down a tree at the Hales' house. The evidence shows that he had moved to Texarkana to be near the Hales' daughter Autumn, who he had been dating for about a year, and that he spent a great deal of time at their house. The Hales were planning a New Year's Eve bonfire at a location in a pasture near their house around the base of a dead pine tree. They decided to cut down the tree. Erwin went to the house on December 6, 1994, took the Hales' chain saw, and began to cut down the tree. After about forty-five minutes, the tree fell in an unexpected direction and landed on Erwin, killing him.

There was evidence that Erwin had worked with his stepfather cutting and trimming trees. The stepfather testified that Erwin did not cut the tree properly. He testified that the vertical distance between Erwin's front and back cuts was too great; that Erwin should have used a rope to pull the tree in a particular direction and should have used wedges to direct the tree's fall.

When Knorpp completed the presentation of her evidence, the trial court granted the landowner's motion for a directed verdict and ruled as a matter of law that Hale was a licensee and that there was no evidence that the landowners were negligent under applicable standards for a licensee.

Knorpp contends that the trial court erred in determining that there was no evidence that Erwin was an invitee and that the court therefore erred by rendering a directed verdict. Knorpp further contends that there was evidence that Erwin was an invitee on this particular day when he came onto the property.

We review a trial court's directed verdict *de novo. Graham v. ARCO,* 848 S.W.2d 747, 750 (Tex.App.—Corpus Christi 1993, writ denied). When reviewing a directed verdict, we consider all of the evidence in the light most favorable to the party against whom the verdict was directed, disregarding all contrary evidence and inferences, and giving the losing party the benefit of all reasonable inferences raised by the evidence. *Qantel Bus. Sys., Inc. v. Custom Controls Co.,* 761 S.W.2d 302 (Tex.1988). If there is any evidence of probative force to raise a fact issue on a material question, the issue must go to the jury, and a directed verdict is improper. *Najera v. Great Atl. & Pac. Tea Co.,* 146 Tex. 367, 207 S.W.2d 365, 367 (1948); *Parks v. DeWitt Co. Elec. Coop., Inc.,* 962 S.W.2d 707, 710 (Tex.App.—Corpus Christi 1998, no pet.).

■ The owner/operator of property owes the highest degree of care to an invitee. An invitee has been described as one who enters on another's land with the owner's knowledge and for the mutual benefit of both. *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 536 (Tex.1975), *citing* RESTATEMENT (SECOND) OF TORTS § 332 (1965); *Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609 (1951); *see Dabney v. Wexler–McCoy, Inc.,* 953 S.W.2d 533, 536 (Tex.App.—Texarkana 1997, pet. denied); *Silva v. Spohn Health Sys. Corp. d/b/a Spohn Hosp.,* 951 S.W.2d 91 (Tex.App.—Corpus Christi 1997, writ denied).

■ A licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent. *Dominguez v. Garcia,* 746 S.W.2d 865, 867 (Tex. App.—San Antonio 1988, writ denied), *quoting* RESTATEMENT (SECOND) OF TORTS § 330 (1965).[1] Thus, a licensee is one who enters with permission of the landowner, but does so for his own convenience or on business for someone other than the owner. *Smith v. Andrews,* 832 S.W.2d 395, 397 (Tex.App.— Fort Worth 1992, writ denied).

■ A landowner owes an invitee a duty to exercise ordinary care to protect him from risks of which the owner is actually aware and those risks of which the owner should be aware after reasonable inspection. *Motel 6 G. P., Inc. v. Lopez,* 929 S.W.2d 1, 3 (Tex. 1996). To recover, a plaintiff must plead and prove that the landowner (1) had actual or constructive knowledge of some condition on the premises; (2) that the condition posed an

---

1. The reporter's notes to the Restatement list social guests among the persons included under the term licensees.

unreasonable risk of harm; (3) that the landowner did not exercise reasonable care to reduce or eliminate the risk; and (4) that the landowner's failure to use such care proximately caused the plaintiff's injuries. *Lopez*, 929 S.W.2d at 3; *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992); *Richardson v. Wal–Mart Stores, Inc.*, 963 S.W.2d 162, 165 (Tex.App.—Texarkana 1998, no pet.).

■ The duty that an owner owes to a licensee is to not injure him by "willful, wanton or grossly negligent conduct, and that the owner use ordinary care to either warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not." *State Dept. of Highways v. Payne*, 838 S.W.2d 235, 237 (Tex.1992). In order to establish liability, a licensee must prove (1) that a condition of the premises created an unreasonable risk of harm to him; (2) that the owner actually knew of the condition; (3) that the licensee did not actually know of the condition; (4) that the owner failed to exercise ordinary care to protect the licensee from danger;[2] and (5) that the owner's failure was a proximate cause of injury to the licensee. *Id. at* 237.

■ In the present case, it is admitted by all that Erwin was a regular visitor to the Hales' house, that he had his own key to the house and came and went unsupervised, and that he was looked on as a likely son-in-law. He was clearly invited onto the property. Thus, it would appear that he should be defined as an "invitee."[3] This is not, however, the case. In Texas, a "social guest" is classified as a licensee. *Dominguez*, 746 S.W.2d 865; *McKethan v. McKethan*, 477 S.W.2d 357, 361 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.); *Weekes v. Kelley*, 433 S.W.2d 769 (Tex.Civ.App.—Eastland 1968, writ ref'd n.r.e.); *Bass v. Cummings*, 415 S.W.2d 438 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.).[4] As set out above, a host owes a social guest a duty not to injure him by willful, wanton or gross negligence. *Lower Neches Valley Authority v. Murphy*, 536 S.W.2d 561, 563 (Tex.1976).

All of the evidence in the present case shows that the decedent was invited onto the premises, but also shows that he falls into the category of a "social guest." In Texas, as a matter of law, he was a licensee. The trial court did not err by finding him to be a licensee.

Knorpp also contends that this conclusion is erroneous and that the trial court erred by rendering a directed verdict in the Hales' favor, because regardless of the decedent's

2. In *State v. Williams*, 940 S.W.2d 583, 584 (Tex. 1996), in setting out the language to be used to instruct a jury on how to apply this legal duty, the Court held that the proper jury instruction in a premises liability case when a plaintiff is an invitee or licensee includes the language "defendant failed to exercise ordinary care to protect plaintiff from danger, by both failing to adequately warn the plaintiff of the condition and failing to make the condition reasonably safe."

3. The difficulty in applying this area of law to social guests is addressed by the Restatement as follows:

> Some confusion has resulted from the fact that, although a social guest normally is invited, and even urged to come, he is not an "invitee," within the legal meaning of that term, as stated in § 332. He does not come as a member of the public upon premises held open to the public for that purpose, and he does not enter for a purpose directly or indirectly connected with business dealings with the possessor. The use of the premises is extended to him merely as a personal favor to him. The explanation usually given by the courts for the classification of social guests as licensees is that there is a common understanding that the guest is expected to take the premises as the possessor himself uses them, and does not expect and is not entitled to expect that they will be prepared for his reception, or that precautions will be taken for his safety in any manner in which the possessor does not prepare or take precautions for his own safety, or that of the members of his family.

RESTATEMENT (SECOND) OF TORTS § 330 cmt. h(3) (1965).

4. An owner/operator's liability for injuries that result from an alleged dangerous condition on the premises depends on the scope of the defendant's duty of care toward the plaintiff, as well as a determination that the duty has been breached. *Thacker v. J.C. Penney Co.*, 254 F.2d 672, 676 (5th Cir.1958). The relationship between the plaintiff and the owner/operator is a material factor in determining the degree of care required of the landowner. *Id.* The degree of care varies depending on whether the plaintiff was an invitee, a licensee, or a trespasser. *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex.1996).

usual status, a different one existed in this particular situation. She argues that because there was a discussion, at which the decedent was present, about cutting down the tree, because Reeda Hale had asked Erwin if he was going to help her husband cut down the tree, and because Erwin was going to be present at the bonfire, then the cutting of the tree was done for the **mutual advantage (or benefit)** of the decedent and the landowner. This, Knorpp argues, constitutes some evidence that the decedent was an invitee and that the trial court therefore erred by finding him to be a licensee as a matter of law.

In determining whether an individual is an invitee or a licensee, the cases typically use the language "mutual benefit" or "mutual advantage." Knorpp argues that this term stretches so far as to include an intangible benefit, such as having the opportunity to attend or conduct the New Year's Eve bonfire.

The concept behind this language was originally brought into Texas cases as a paraphrase of the predecessor of RESTATEMENT (SECOND) OF TORTS § 332 (1965). *Carlisle v. J. Weingarten, Inc.,* 137 Tex. 220, 152 S.W.2d 1073, 1076 (1941)[5]; *see Spencer v. Dallas,* 819 S.W.2d 612 (Tex.App.—Dallas 1991, no writ). In *Carlisle,* the Court discussed an invitee in terms of business-related ventures exclusively, as discussed in the Restatement. Later cases discussed the necessity of determining who qualified as an invitee and cited to the Restatement and cases applying the Restatement concepts. However, instead of using the more explicit terminology contained in Section 332[6] to determine whether a person was an invitee, the courts instead looked to see whether an entry was one by a person invited and to the "mutual advantage" of both parties. *See Rosas,* 518 S.W.2d at 536.

This language does not appear in the Restatement's description of an "invitee," but is found in 65 C.J.S. *Negligence* § 63(41) (1966).[7] The "mutual advantage" or "mutual benefit" language found in C.J.S. has been repeated by numerous cases, including the most recent premises liability cases from this court. *See Dabney,* 953 S.W.2d at 536.

The two terminologies were merged in *Cowart v. Meeks,* 131 Tex. 36, 111 S.W.2d 1105 (1938), where that court discussed the business relations between the injured person and landowner as showing the nature of his invitee status, and then stating that in "the absence of some relation which inures to the **mutual benefit** of the two, or to that of the owner, no invitation can be implied, and the injured person must be regarded as a mere licensee." *Crum v. Stasney,* 404 S.W.2d 72, 75 (Tex.Civ.App.—Eastland 1966, no writ) (emphasis added).

Thus, we have the courts using language abstracted from C.J.S. as a shorthand method of describing the analysis to be used in determining whether a party qualifies for the status of "invitee," but actually using the analysis set out in the Restatement.

It appears that the formula set out by the Restatement for analysis of invitee/licensee/trespasser status was adopted for use in Texas by *Carlisle,* 152 S.W.2d 1073, as reiterated in *Rosas,* 518 S.W.2d at 536, and that it remains the proper analysis to apply.

The decedent was a social guest of the landowners. He was not expecting payment for cutting down the tree, and the evidence is that no one asked him personally to do so,

---

5. The Court in *Carlisle v. J. Weingarten, Inc.,* 137 Tex. 220, 152 S.W.2d 1073 (1941), discussed factors important in the determination of whether a person entering the premises of another is a public invitee or business visitor (the section defines an "invitee" as either a public invitee or business visitor) by applying the analysis set out in the RESTATEMENT (SECOND) OF TORTS § 332 (1965).

6. RESTATEMENT (SECOND) OF TORTS § 332 (1965) defines invitee:
    (1) An invitee is either a public invitee or a business visitor.

    (2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
    (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

7. *Atchison, Topeka, and Santa Fe Railway Co. v. Smith,* 563 S.W.2d 660, 666 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.).

but that he volunteered to do so. There was no business relationship or dealing in existence or contemplated between the decedent and the landowner, and it is unquestioned that the land was not open to the public. Accordingly, as a matter of law, the decedent was not an invitee, but was a licensee on this particular occasion, and the trial court did not err by so holding.

Knorpp also argues that, in the alternative, there was evidence that the dead tree presented an unreasonable risk of harm and that there is at least some evidence that the landowners were negligent in failing to warn of the danger involved in cutting down the tree. This contention is based upon Knorpp's contention that the landowners were aware of the risk of harm and failed to use reasonable care to reduce the risk. This analysis is applied when the claimant is in the status of an invitee. We have concluded that the decedent was a licensee; thus, the analysis does not apply to the present case. Even if we analyze this argument as an attempt to show liability for a licensee, the attempt fails on several grounds.

In the present case, the undisputed evidence is that the decedent had worked with his father trimming and felling trees and that he had at least a passing acquaintance with the dangers involved. The undisputed evidence also shows that the landowners were unaware of any special dangers involved in cutting down a dead tree. Thus, the evidence shows that the licensee was aware of the danger involved in the action that he intentionally undertook.

The evidence also shows that the tree itself was not a dangerous condition. The worry stated by the landowners was that if they burned it in the bonfire, it would fall on someone. Cutting the tree was the act that caused the danger.

Counsel attempts to compare this situation to a slip-and-fall case where the ice on the floor is not dangerous of itself-it becomes dangerous only when someone slips on it. We do not accept this basic premise. Ice on the floor is generally a dangerous condition in and of itself. A dangerous condition is one which creates a substantial risk of injury when the property is used with due care in a manner in which it is reasonably foreseeable that it will be used. *See* BLACK'S LAW DICTIONARY 394 (6th ed.1990). It is generally foreseeable that a floor will be used by people walking, and thus, a substantial risk of injury is foreseeable. In the present case, the tree at that time was not in a condition that it was likely to fall until someone cut or burned the tree. Therefore, the dangerous condition of the tree did not occur until it was cut.

Further, before the evidence could show that the landowners could be aware that cutting the tree would be a dangerous condition-beyond that which always exists when a tree is cut down-they would have been required to anticipate that the decedent, who was more knowledgeable about cutting trees than the landowners, would cut it in such a way that it became dangerous and fall in an unexpected manner.

In summary, the condition did not exist until Erwin began cutting the tree, thus, it was not a "condition of the premises"; the owner did not know that the licensee was creating a dangerous condition; and the licensee was the one creating the condition. In light of those facts, there was nothing for the landowner to warn the licensee about, because no dangerous condition existed until it was created by the licensee and, therefore, no duty to warn was shown by the evidence.

The judgment is affirmed.