

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00020-CV

_____

RANGER ABBOTT, Appellant

V.

LIBERTY NATIONAL BANK, Appellee

On Appeal from the 62nd District Court
Lamar County, Texas
Trial Court No. 79988

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

In 2008, Ranger Abbott obtained a money judgment against Scotty Norwood and had a writ of garnishment served on Liberty National Bank in an attempt to collect on that judgment. Liberty denied having any of Scotty's accounts or property. Subsequently, Scotty and his wife, Treda, filed bankruptcy. Some two years later, after learning more information about the relationship between Liberty and the Norwoods, Abbott sued Liberty seeking declaratory judgment that Scotty was Liberty's customer at the time of the garnishment and that Liberty should have frozen Treda's accounts. After a jury was empaneled and Abbott concluded his case-in-chief, the trial court granted Liberty's motion for a directed verdict and entered a take-nothing judgment.

On appeal, Abbott contends that the trial court erred in granting a directed verdict because he "presented probative evidence to raise a fact issue as to whether" Scotty was a Liberty customer at the time the writ of garnishment was served on Liberty.[1]

---

[1] In late 2005, Liberty had noticed that Scotty occasionally came to the bank and cashed some checks drawn from other banks. Under his endorsement of such checks, he wrote the account number of Treda, who had both a checking account and a savings account at Liberty. Scotty, though, had no account at Liberty. In order to protect the bank from a future check cashed by Scotty, Liberty drafted, and Treda signed and agreed to, a letter agreement giving Liberty recourse against Treda's checking account if any check Scotty cashed at Liberty was returned. After the letter agreement was in place, Scotty cashed numerous checks payable to himself at the bank, including a $4,000.00 check from Ranger Abbott on or about January 31, 2007.

Treda's savings account had been initially funded with $10,000.00 from a $21,000.00 check payable to Scotty from his mother, Geneva Norwood, and endorsed by Scotty and Treda. Thereafter, Scotty endorsed and deposited a number of checks, payable to himself, into the savings account, including one deposit for $3,500.00 which was comprised of seven separate $500.00 checks, all dated September 19, 2008. On July 21, 2008, Abbott had been awarded judgment against Scotty in the amount of $28,000.00, plus pre- and post-judgment interest. On October 2, 2008, Abbott obtained the writ of garnishment against Liberty as garnishee. At the time the writ was filed and served, Scotty did not have an account at the bank and did not have a right of access to an account at the bank; however, Treda had both a checking account and a savings account with Liberty.

On October 2, 2008, the day the writ of garnishment was filed and served, the amount in Treda's checking account was $919.54, and the amount in the savings account was $13,615.01. As of October 27, 2008, the checking account balance was $4,514.91, and the savings account balance remained unchanged. From the date the writ was

We affirm the trial court's judgment.

In his sole point of error on appeal, Abbott contends that the trial court erred in granting the directed verdict because Scotty was a customer of the bank.

A trial court's directed verdict is reviewed de novo. *John v. Marshall Health Servs.*, 91 S.W.3d 446, 450 (Tex. App.—Texarkana 2002, pet. denied) (citing *Knorpp v. Hale*, 981 S.W.2d 469, 471 (Tex. App.—Texarkana 1998, no pet.)). When reviewing the directed verdict in this case, we must consider the evidence in the light most favorable to Abbott, disregarding all contrary evidence and inferences, and giving Abbott the benefit of all reasonable inferences raised by the evidence. *See id.* (citing *Qantel Bus. Sys. v. Custom Controls Co.*, 761 S.W.2d 302, 303 (Tex. 1988)). If there is any evidence of probative force to raise a fact issue on the material question of probable cause, a directed verdict is improper. *Id.*

---

served on the bank until the end of 2008, a total of $13,540.00 was withdrawn from Treda's savings account. When the writ was served on the bank's president, Carl Cecil, he ordered that the letter agreement be cancelled. He also called Treda, informed her of the writ, and told her that the letter agreement had been cancelled. Liberty cancelled the letter agreement because of the potential risk involved. Just minutes after the writ was served, the bank emailed all of its tellers and loan officers to warn them of the situation:

> [W]e have received a Writ of Garnishment on Scotty Norwood. We cannot cash any checks payable to Scotty Norwood or allow him to deposit checks payable to himself into Treda Norwood's account until further notice. If you have any questions about this matter contact Carl Cecil, Jan Weiberg, or Cindy Ringwald

On October 27, 2008, Liberty answered the writ of garnishment, denied that it was "indebted to Scotty Norwood" and denied that it was "in possession of any effects belonging to Scotty Norwood."

On May 21, 2009, Scotty and Treda filed for bankruptcy. After the bankruptcy filing, Liberty made additional loans to Treda.

On December 7, 2010, Ranger Abbott filed suit against Liberty seeking a declaratory judgment that Scotty was a customer of the bank when the writ was served, that the bank failed to capture Scotty's funds, and that Abbott was damaged as a result of the bank's failure. Liberty denied that Scotty was a customer of the bank. After a jury trial, the trial court granted Liberty's motion for a directed verdict and entered a take-nothing judgment. Abbott filed this appeal.

3

The signature card for a bank account is a type of contract. *Allen v. Wachtendorf*, 962 S.W.2d 279, 282 (Tex. App.—Corpus Christi 1998, pet. denied). The name on an account is prima facie proof of ownership of the account. *See Tex. Commerce Bank–New Braunfels*, *Nat'l Assoc. v. Townsend*, 786 S.W.2d 53, 54 (Tex. App.—Austin 1990, writ denied) (determining that, because of name of account, bank had legal relationship only with depositor). A bank is not required to inquire into the ownership of the funds deposited. *Id*. A bank is entitled to rely on its deposit agreement when determining to whom it is indebted. *Bank One*, *Tex.*, *N.A. v. Sunbelt Sav.*, *F.S.B.*, 824 S.W.2d 557, 557–58 (Tex. 1992).

The facts of *Bank One* are somewhat similar to the present case. In *Bank One*, Sunbelt Savings obtained a judgment against James Bramlett, the sole shareholder, officer, and employee of Bramcon General Contractors. *Id.* at 557. Sunbelt Savings knew that, even though Bramlett did not have a personal account at the bank, he commingled his personal funds into Bramcon accounts. *Id*. at 557–58. Sunbelt Savings obtained a writ of garnishment against Bank One, naming Bramlett as the judgment debtor. *Id*. at 558. Bank One responded that it was not indebted to Bramlett. *Id*. After this response, the Bramcon funds were withdrawn from Bank One. *Id*. Agreeing with Bank One, the trial court granted summary judgment, holding that Bank One was not indebted to Bramlett. *Id*. The court of appeals reversed, and the Texas Supreme Court reversed the court of appeals and rendered judgment for Bank One. *Id*. The higher court concluded that, unless a deposit agreement created a debtor-creditor relationship between the bank and the judgment debtor, the bank was not indebted to the judgment debtor. *Id*. The court further stated:

4

When a creditor wants to challenge title to funds held by a third party, the creditor should seek a writ of garnishment naming the nominal owner not the true owner. The court is then responsible for determining true ownership. Requiring a garnishee bank to determine true ownership of its deposits improperly shifts a judicial responsibility to the garnishee.

*Id.*

Here, the evidence clearly establishes that Liberty does not have an account for Scotty, but it does have accounts for Scotty's wife, Treda. Treda's accounts do not become Scotty's accounts simply because Scotty deposited funds into them.[2] *See Whitney Nat'l Bank v. Baker*, 122 S.W.3d 204 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

Abbott argues that the bank's decision to deposit checks payable only to Scotty into the savings account with both Scotty and/or Treda's endorsement, and later to deposit checks payable only to Scotty, endorsed only by Scotty, went beyond the authorization contained in the letter agreement and "constituted additional authority for Scotty" in the form of a "supplemental agreement." While Abbott acknowledges that the standard practice is that banks may rely on only the account agreements on file with the bank when considering a writ of garnishment, he contends that the letter agreement,[3] the "supplemental agreement," and the parties' course of

---

[2]If Abbott sought to challenge title to the funds held in Treda's account, he should have sought a writ of garnishment naming Treda, the nominal owner, not Scotty, the alleged true owner. *See Bank One*, 824 S.W.2d at 558.

[3]The full text of the letter agreement is as follows:

You may take this letter as my authorization to allow Scotty Norwood to use my account #1636604 as recourse for checks cashed that are not drawn on your bank, with or without my personal endorsement on the check. I will not hold the bank responsible for any returned checks. I understand that by using my account as recourse, any checks cashed that may be returned for any reason will be charged back to my account and I will be responsible for covering any overdrawn balance that could result. I also understand that if the returned check exceeds the balance in my account and an overdraft occurs, returned checks and/or overdraft fees could result.

dealing creates an exception to this standard practice because the bank's decision to "extend account rights so Scotty in essence, creat[ed] a customer/bank relationship." Abbott fails, however, to cite any caselaw recognizing such an exception. We are aware of none. Here, there is no evidence raising a fact issue of whether Liberty is indebted to Scotty. Accordingly, we overrule Abbott's point of error.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     December 27, 2012
Date Decided:      February 1, 2013

---

I indemnify the bank from any loss or claims by me in the connection with these cashed checks.