**Reversed and Rendered and Opinion filed March 8, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-20-00457-CV

## HARRIS COUNTY FLOOD CONTROL DISTRICT, Appellant

## V.

## LANCE HALSTEAD, Appellee

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2018-33563**

### O P I N I O N

Harris County Flood Control District ("HCFCD") appeals the denial of its plea to the jurisdiction. While clearing trees as a subcontractor chainsaw operator in a HCFCD right of way, Lance Halstead was injured when a tree he was cutting fell and struck him. After he sued HCFCD for negligence, HCFCD filed a plea to the jurisdiction, contending that Halstead had not established a waiver of immunity under the Texas Tort Claims Act ("TTCA"). The trial court denied the jurisdictional plea, and HCFCD appealed the order.

For the reasons explained below, we conclude Halstead has failed to demonstrate a waiver of HCFCD's governmental immunity from suit for his claims. We reverse the trial court's order denying HCFCD's jurisdictional plea and render judgment dismissing Halstead's claims against it.

## Background

We quote the relevant background facts directly from Halstead's live pleading, his Third Amended Petition:

> This lawsuit is necessary as a result of personal injuries that Plaintiff received on or about November 25, 2017. At that time, Plaintiff was employed by Ag Power as a chainsaw operator. He was working on a jobsite clearing land after Hurricane Harvey for Harris County Flood Control. Harris County hired Phillips & Jordan to perform the work. Phillips & Jordan in turn hired Grillot (a safety company). Harris County Flood Control District hired Stuart Consulting Group (a monitoring company) to oversee the work being done by Ag Power. While Plaintiff was cutting a tree marked by Defendants for cutting, the tree came out of the ground, kicked back, struck Plaintiff, and crushed his face.

Halstead sued not only HCFCD but also Phillips & Jordan, Inc. ("P&J"), Grillot Construction, LLC, Stuart Consulting Group, Inc., and Gary Earls d/b/a Hoods Done Right. Against all defendants, he alleged claims for negligence, negligence per se, and gross negligence.

HCFCD filed a plea to the jurisdiction. At that time, Halstead's live pleading was his First Amended Petition. The trial court granted HCFCD's plea in December 2019 and dismissed Halstead's claims against HCFCD without prejudice.

Halstead filed his Third Amended Petition approximately five months later in May 2020.[1] In that petition, Halstead re-asserted his negligence claims against

---

[1] Our record does not include a Second Amended Petition.

HCFCD. He also alleged that the legislature waived HCFCD's immunity from suit under section 101.021 of the TTCA in two respects. *See* Tex. Civ. Prac. & Rem. Code § 101.021. First, Halstead asserted that immunity was waived under section 101.021(2) because the tree was a premises defect. Specifically, Halstead alleged that the "tree constituted an unreasonably dangerous condition (said trees were owned by the County) once Halstead began cutting it." Second, Halstead alleged a waiver of immunity under section 101.021(1) because "the injury was caused by the use of motor-driven equipment."

HCFCD filed a second plea to the jurisdiction, as well as a motion to modify the trial court's order granting the first plea to the jurisdiction to dismiss all of Halstead's claims with prejudice, instead of without prejudice. In its second plea to the jurisdiction, HCFCD argued among other things that the pleadings and evidence do not establish a waiver of immunity because: (1) there is no allegation or evidence that the motor-driven equipment was being operated by a HCFCD employee at the time of injury; (2) there is no allegation or evidence that Halstead was not aware of the danger; and (3) the tree was not a defective condition of the property.

The trial court denied both the second plea to the jurisdiction and the motion to modify.[2] HCFCD appeals the denial of its second jurisdictional plea. *See id.* § 51.014(a)(8).

## Analysis

In the dispositive issues before us, HCFCD contends that the trial court erred in denying its second plea to the jurisdiction for two reasons: (1) Halstead failed to

---

[2] The trial court's order states that the "motion to modify is denied." HCFCD's motion to modify fully incorporated by reference its second plea to the jurisdiction. Thus, the court's order denying the motion to modify also denied the second plea to the jurisdiction. On appeal, both parties agree that the trial court denied the second plea to the jurisdiction.

3

demonstrate a waiver of immunity under section 101.021(2) because his claim lies in premises liability but he has neither alleged facts nor presented evidence establishing the required elements of a premises defect claim against a governmental unit such as HCFCD; and (2) Halstead failed to demonstrate a waiver of immunity under section 101.021(1) because Halstead did not allege or prove that a HCFCD employee was operating the motor-driven equipment (the chainsaw).

## A. Standard of Review and Governing Law

The common law doctrine of governmental immunity protects political subdivisions of the state from suit when they perform governmental functions.[3] *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). Governmental units may be sued only when the legislature has waived the unit's immunity in clear language. *See* Tex. Gov't Code § 311.034; *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011). The TTCA waives governmental units' immunity from suit in three areas when the statutory requirements are met: (1) use of motor-driven vehicles or motor-driven equipment; (2) injuries arising out of a condition or use of tangible personal property; and (3) premises defects. *See Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224-25 (Tex. 2004). The waiver of immunity in these areas applies if the employee or governmental unit would be liable to the claimant according to Texas law. *See* Tex. Civ. Prac. & Rem. Code § 101.021(1)(B), (2).

If a government defendant is immune from suit, the trial court has no subject-matter jurisdiction to hear the case against it, and the defendant may properly

---

[3] Sovereign immunity generally protects the state against lawsuits for money damages; governmental immunity provides protection to subdivisions of the state, including counties. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003); *see also* Tex. Civ. Prac. & Rem. Code § 101.001(3).

4

challenge the suit in a plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 225-26. Jurisdictional questions of this sort are legal matters we review de novo. *See State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007).

A plaintiff bears the burden of establishing a waiver of immunity under the TTCA. *See Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). A governmental unit challenging whether a claimant has met this burden may, by a plea to the jurisdiction, contest the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). If a plea challenges the pleadings, we determine if the pleader has alleged facts that "affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226. We liberally construe the pleadings, taking all factual assertions as true and looking to the pleader's intent. *See City of Ingleside v. City of Corpus Christi*, 569 S.W.3d 589, 590 (Tex. 2015). Like the jurisdictional question itself, the sufficiency of a claimant's pleading to establish a waiver of immunity is a legal issue we review de novo. *Miranda*, 133 S.W.3d at 226.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we look beyond the pleadings and consider evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, even if the evidence implicates both the court's jurisdiction and the merits of a claim. *Id.* at 227. For a plea that challenges the existence of jurisdictional facts, our standard of review generally mirrors that of a traditional summary judgment: a plaintiff must raise a genuine issue of material fact to overcome the challenge to the trial court's jurisdiction. *Id.* at 221, 228. In determining whether a plaintiff has met that burden, we take as true all evidence favorable to the plaintiff and indulge every reasonable inference and resolve any doubts in the plaintiff's favor. *Id.* at 228. If the evidence and allegations create a fact question regarding jurisdiction, then a court cannot grant a plea to the

jurisdiction, and the factfinder must resolve the fact issue. *Id.* at 227-28. But if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then a court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

### B. Halstead's factual allegations against HCFCD sound in negligent activity, not premises liability.

In its first issue, HCFCD contends that trial court erred by implicitly determining that its immunity was waived as to Halstead's premises defect claim. Halstead alleged that the legislature has waived HCFCD's immunity from suit for his negligence claims because they are based on a premises defect. HCFCD likewise insists that Halstead's claims lie in premises liability and that he failed to plead or present evidence establishing the required elements of a premises defect claim against a governmental unit. The nature of a claim being a question of law,[4] however, we disagree that the facts Halstead has alleged permit recovery from HCFCD under a premises defect theory.

Under common law, a private premises owner may be liable for two types of negligence: that arising from a negligent activity on the premises, and that arising from a premises defect. *See Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997). Negligent activity and premises defect are independent theories of recovery. *See id.* at 529. A negligent activity claim requires that the claimant's injury result from a contemporaneous activity, whereas a premises defect claim is based on the property itself or a condition on the property being unsafe. *See id.* at 527; *Sampson*, 500 S.W.3d at 388; *City of Houston v. Ayala*, 628 S.W.3d 615, 625-26 (Tex. App.—Houston [14th Dist.] 2021, no pet.). If a person is injured as a result of a condition of the premises, rather than by any ongoing conduct occurring at the

---

[4] *Sampson*, 500 S.W.3d at 385; *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 866 (Tex. 2002); *City of Houston v. Ayala*, 628 S.W.3d 615, 625 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

time of injury, that person's recovery is limited to a premise defect cause of action. *See Olivo*, 952 S.W.2d at 527; *E.I. Dupont de Nemours & Co. v. Roye*, 447 S.W.3d 48, 56-57 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd by agr.). Thus, under a single set of alleged facts, a party cannot recover under both theories because they are governed by different standards and elements of proof.

A similar distinction exists when negligence claims are asserted against governmental units. *See, e.g.*, *City of San Antonio v. Estrada*, 219 S.W.3d 28, 32 (Tex. App.—San Antonio 2006, no pet.); *City of Houston v. Harris*, 192 S.W.3d 167, 176-77 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (Edelman, J., concurring). The TTCA applies different standards of care upon a governmental unit for negligence claims based on "a condition or use of tangible personal property" or on "use of . . . motor-driven equipment" as opposed to claims based on a "condition of . . . real property" or a "premises defect." *See* Tex. Civ. Prac. & Rem. Code §§ 101.021(2) (tangible personal property; condition of real property), 101.021(1) (motor-driven vehicles or equipment), 101.022(a) (premises defect); *Sampson*, 500 S.W.3d at 385.[5] For example, as the supreme court explained in *DeWitt*, with "premise[s] defects, liability is predicated not upon the actions of the governmental unit's employees but by reference to the duty of care owed by the governmental unit to the claimant for premise and special defects as specified in section 101.022 of the . . . Tort Claims Act." *DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995). Alternatively, "[a]s with negligent activity claims under common law, to state a "use" of motor-driven equipment or tangible personal property claim under the TTCA, "the injury must be *contemporaneous* with the use of the equipment or personal property—'[u]sing that property must have actually

---

[5] A claim for a condition or use of real property is a premises defect claim under the TTCA. *Miranda*, 133 S.W.3d at 230.

7

caused the injury.'" *Sampson*, 500 S.W.3d at 388-89 (quoting *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001)). Moreover, in a suit against a governmental unit, as in litigation between private parties, negligence claims of the sort here at issue will permit recovery either in premises liability (premises defect) or in ordinary negligence (negligent activity), but not both. *See, e.g.*, *id.* at 385 (claim against governmental unit cannot be both a premises defect claim and a claim relating to a condition or use of tangible property); *Olivo*, 952 S.W.2d at 527; *Roye*, 447 S.W.3d at 56-57.

This activity-versus-defect dichotomy applies when we determine whether a claimant has alleged a waiver of immunity under the TTCA. *See Sampson*, 500 S.W.3d at 388-90. As *Miranda* explained, and *Sampson* reaffirmed, the TTCA waives immunity for two distinct tort causes of action: one arising from tangible personal property and one arising from a premises defect. *Id.* at 385. In evaluating whether a claimant has alleged a premises defect or a negligent activity claim against a governmental unit—and a concomitant waiver of immunity for that claim—the focus is on whether the injury occurred because of a condition of real property (premises defect), or whether the injury occurred as a contemporaneous result of the activity itself (negligent activity). *See id.* at 388.

Accordingly, we consider the nature of Halstead's claims and whether they are properly categorized as based on a premises defect or on a use of motor-driven equipment. We begin by observing that Halstead invokes both theories in the alternative. However, he alleges a singular core set of facts, namely, that while employed by Ag Power as a chainsaw operator, and while working on a jobsite clearing land for HCFCD, he "was cutting a tree marked by Defendants for cutting, [when] the tree came out of the ground, kicked back, struck Plaintiff, and crushed his face." Both Halstead and HCFCD characterize these facts as giving rise to a

8

premises defect claim, but we disagree. Because Halstead alleged that he was injured contemporaneously with the ongoing activity of operating motor-driven equipment—that he was actively cutting a tree with his chainsaw when the injury occurred—we conclude his Third Amended Petition will not support recovery under a premises defect theory. Instead, the facts alleged potentially support recovery and a waiver of governmental immunity under Halstead's alternative theory: use of motor-driven equipment. *See* Tex. Civ. Prac. & Rem. Code § 101.021(1).[6]

Our conclusion aligns with many other appellate court decisions evaluating comparable facts and holding that the claims did not sound in premises defect. *E.g.*, *Abalos v. Oil Dev. Co. of Tex.*, 544 S.W.2d 627, 628, 631 (Tex. 1976) (independent contractor's operation of mechanical pump on property); *Estrada*, 219 S.W.3d at 31-32 (guest who alleged that her injuries resulted from firefighter's descent down the fire pole with guest on his back/shoulders stated negligent activity claim, not premises defect); *Gaspard v. DuPont Dow Elastomers, L.L.C.*, 140 S.W.3d 415, 426 (Tex. App.—Beaumont 2004, no pet.) (concluding that negligence action brought against premises owner by independent contractor's employee, who alleged that his injury occurred when he manually removed bale and not when the compactor jammed or when the conveyor shut down, did not involve a premises defect but rather an allegedly negligent activity); *Knorpp v. Hale*, 981 S.W.2d 469, 474 (Tex. App.—Texarkana 1998, no pet.). *Knorpp* is particularly illuminating because in that case the decedent was killed while cutting down a tree. *Knorpp*, 981 S.W.2d at 471. The Texarkana Court of Appeals concluded that the tree did not pose an unreasonable risk of harm. Although the tree was dead, it was not the dangerous

---

[6] The provision regarding use of tangible personal property, section 101.021(2), potentially would apply when a claimant alleges injury contemporaneously with the use of a chainsaw, but Halstead did not allege that theory in his Third Amended Petition. Even if he had asserted it, our analysis would not differ materially.

condition; rather, cutting the tree was the act that caused the danger. *See id.* at 474. The court explained that "the condition did not exist until [the decedent] began cutting the tree, thus, it was not a 'condition of the premises[.]'" *Id.*

Although Halstead's pleading does not support recovery in premises defect, he has pleaded a negligent activity claim in the alternative and we proceed to consider whether he has shown a waiver of immunity for that claim.

## C. Halstead has not demonstrated a waiver of immunity for injury caused by the use of motor-driven equipment under section 101.021(1).

As an alternative to his premises-defect theory, Halstead alleged that "the injury was caused by the use of motor-driven equipment." Tex. Civ. Prac. & Rem. Code § 101.021(1)(A). That section provides:

> A governmental unit in the state is liable for:
>
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
>> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>>
>> (B) the employee would be personally liable to the claimant according to Texas law . . . .

*Id.*

As to this claim, HCFCD's alleged liability is predicated on the "use" of motor-driven equipment, that is, the activity of bringing the chainsaw "'into action or service'" or applying it to a given purpose.[7] *See Sampson*, 500 S.W.3d at 388 (quoting *Miller*, 51 S.W.3d at 588). To state a claim based on "use" of tangible

---

[7] We presume that a chainsaw is motor-driven equipment for purposes of the TTCA, which HCFCD does not dispute.

10

personal property under the TTCA, the injury must be contemporaneous with the property's use. *Id.* at 388-89. The same is true for a motor-driven equipment claim to the extent, like here, the equipment is tangible personal property. Given the legislature's preference for a limited immunity waiver, we strictly construe section 101.021's motor-driven-equipment-use requirement. *See LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992).

In its second plea to the jurisdiction, HCFCD argued that no waiver of immunity has been shown under section 101.021(1) because Halstead neither pleaded nor proved that his injury resulted from a governmental employee's use of motor-driven equipment. Section 101.021(1)'s waiver of immunity is not invoked unless a *government* employee is actively operating the equipment at the time of injury. *See Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) ("To begin with, a government employee must have been actively operating the vehicle at the time of the incident."); *LeLeaux*, 835 S.W.2d at 51; *City of Houston v. Ranjel*, 407 S.W.3d 880, 888 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("For waiver to exist [under section 101.021], a governmental employee must be the one operating or using the motor-driven equipment or tangible personal property.").

Halstead does not dispute that he was employed by a subcontractor (Ag Power) hired by HCFCD's contractor (P&J) and in fact alleges as much in his Third Amended Petition. Under the TTCA, independent contractors and their employees are not considered government employees. *See* Tex. Civ. Prac. & Rem. Code § 101.001(2) ("'Employee' means a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, *but does not include an independent contractor, an agent or employee of an independent contractor*, or a

person who performs tasks the details of which the governmental unit does not have the legal right to control.") (emphasis added).

Halstead argues that his status as the employee of an independent contractor is not fatal to his waiver of immunity position because HCFCD had a right to control the details of his work and, therefore, he (and P&J and Ag Power) ought to qualify as HCFCD employees for TTCA purposes. Viewing the pleadings and jurisdictional evidence in the light most favorable to Halstead, however, we conclude that P&J and its subcontractor Ag Power were independent contractors and not employees of HCFCD.

An independent contractor is one who, in pursuit of an independent business, undertakes specific work for another using his own means and methods without submitting to the control of the other person as to the details of the work. *Indus. Indem. Exch. v. Southard*, 160 S.W.2d 905, 907 (Tex. 1942); *Ranjel*, 407 S.W.3d at 890. Conversely, an employer controls not only the end sought to be accomplished, but also the manner and means by which the end result is obtained. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002); *Ranjel*, 407 S.W.3d at 890. In determining whether a person qualifies as an employee or an independent contractor, we focus on who has the right to control the details of the work. *McNamara*, 71 S.W.3d at 312; *Ranjel*, 407 S.W.3d at 890; *Olivares v. Brown & Gay Eng'g, Inc.*, 401 S.W.3d 363, 370 (Tex. App.—Houston [14th Dist.] 2013), *aff'd*, 461 S.W.3d 117 (Tex. 2015). A "possibility" of control is not evidence of a right to control. *Ranjel*, 407 S.W.3d at 890; *see Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex. 1999). The type of control necessary to establish employee status for waiver-of-immunity purposes is control over the details of the operation or use of the motor-driven equipment or tangible personal property. *Ranjel*, 407 S.W.3d at 890.

We measure the right of control by considering: (1) the independent nature of the business; (2) the worker's obligation to furnish the tools, supplies, and materials necessary to perform the job; (3) the worker's right to control the progress of the work except about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job. *Tex. A&M Univ. v. Bishop*, 156 S.W.3d 580, 584-85 (Tex. 2005); *McNamara*, 71 S.W.3d at 312; *Ranjel*, 407 S.W.3d at 890. When the material underlying facts are not in dispute and can give rise to only one reasonable conclusion, the question whether a worker is an employee or an independent contractor is a question of law. *Bishop*, 156 S.W.3d at 585.

HCFCD attached to its plea a copy of the contract with P&J for tree and debris removal. The agreement was for a one-year period, subject to renewal annually. It provides that P&J is to "furnish all equipment and labor necessary to remove, load, haul, and dispose of debris from designated HCFCD rights-of-ways (ROW) and channels from the result of any natural or man-made disaster or emergency situation." There is no evidence that HCFCD provided the chainsaw Halstead was using. The agreement called for P&J's services on an as-needed basis following a disaster or emergency, and it contains terms regarding the time period by which P&J was required to mobilize following notice and request by HCFCD. Payment for tree removal was on a per-tree basis. The agreement neither reserves nor assigns to HCFCD the right to control the means, methods, or details of P&J's tree removal work. HCFCD's inspector, Audrie Miller, testified in her deposition that she is not authorized to instruct workers "how to do their job."

In support of his argument that HCFCD controlled the details of his work, Halstead directs us to two facts from the record. First, Halstead points to Miller's deposition where she described an instance on another job with different contractors

when she saw workers attempting to pull down a tree using a cable and she told them she did not think what they were doing was safe and that cables were not allowed on the job site. Based on that testimony, Halstead says that Miller had the authority and duty to stop work when she saw an unsafe activity or a hazardous condition, and that she saw Halstead unsafely cutting the tree but did not stop him.[8] It is undisputed that Miller never counseled anyone at P&J about unsafe work practices.

Second, again citing Miller's testimony, Halstead asserts that HCFCD controlled which trees were to be removed and that it hired other personnel (Stuart Consulting Group) to supervise. Miller stated that, as to this particular drainage channel, Stuart was instructed to mark trees for removal if they were severely eroded, dead, or appeared as if they might fall in another flood. Miller was primarily responsible for verifying which trees were to be cut. According to Miller, her job was to make sure that Stuart was marking appropriate trees for removal and not "trying to take extra trees for extra money" because payment was on a per-tree basis.

Viewed in the light most favorable to Halstead, this evidence does not raise a fact issue as to whether P&J (or Ag Power) was an employee rather than an independent contractor. Even presuming Miller had an absolute right to order a work stoppage when she observed unsafe conduct by the sawmen, the right or duty to stop work does not make one an employer. *See Rangel*, 407 S.W.3d at 891; *Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 702 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (stating that requiring an independent contractor to abide by a premises owner's safety rules and regulations and retaining the authority to stop work once it has begun does not establish actual control).

---

[8] Miller was on-site and saw the incident, although she was across the creek from Halstead when it occurred.

Additionally, identifying which trees to cut presents only a minimal degree of control that exists in any working relationship of this type and is no evidence of a degree of control detailed enough to indicate employee status. *See McNamara*, 71 S.W.3d at 312-13 (noting that company designation of delivery locations and where pay tickets were to be dropped off related to the ends to be achieved, and not control of the details of work; "Although Limestone told Mathis where to pick up and drop off loads, and Mathis had to turn in his load tickets to get paid, he had broad discretion in how to do everything else."); *Eagle Trucking Co. v. Tex. Bitulithic Co.*, 612 S.W.2d 503, 508 (Tex. 1981) (holding that construction company was not liable for negligence of driver who hauled sand when company "had no more than the power to direct the place sand was to be loaded and the place it was to be unloaded"). In *Anchor Casualty Co. v. Hartsfield*, the supreme court held that a worker who performed work requiring special skill, furnished his own tools, came and went at his own discretion, was paid by the job, and was not on the employer's tax rolls was an independent contractor as a matter of law. 390 S.W.2d 469, 471 (Tex. 1965). Directing a tree-removal worker to the trees that require removal is not control over the means and details of how the worker performs the removal. HCFCD hired Stuart to designate the trees to cut, and there is no evidence that HCFCD controlled how to cut them, how to operate the chainsaw, or the proper cutting methods to complete the work. At most, Halstead's evidence indicates that HCFCD had control over the end results of the tree removal. *See Bishop*, 156 S.W.3d at 584-85; *McNamara*, 71 S.W.3d at 312; *Olivares*, 401 S.W.3d at 376-78. To the extent any doubt exists in the statutory language, we resolve that doubt in favor of retaining immunity. *Wichita Falls State Hosp.*, 106 S.W.3d at 696-97.

Halstead also notes that HCFCD hired Stuart to supervise, but merely hiring a supervisor to oversee or monitor work does not establish the degree of control

15

necessary to prove employer status. *Southard*, 160 S.W.2d at 907. "The courts of this State have repeatedly held that an employer has the right to exercise such control over an independent contractor as is necessary to secure the performance of the contract according to its terms, in order to accomplish the results contemplated by the parties in making the contract, without thereby creating such contractor an employee of such company." *Id.*[9]

Citing *Pollard v. Missouri Pacific Railroad Co.*, 759 S.W.2d 670 (Tex. 1988) (per curiam, op. on reh'g), Halstead argues that HCFCD's control over which trees to fell is sufficient to satisfy the test for showing an employer-employee relationship. In *Pollard*, MOPAC hired an independent contractor to remove poles and wires from one of MOPAC's rights-of-ways. *Id.* at 670. One of the contractor's employees was injured while performing the work. *Id.* The supreme court held that there was a genuine issue of material fact concerning whether MOPAC had the necessary degree of control over the details of the contractor's work to give rise to the duty announced in *Redinger v. Living*, 689 S.W.2d 415 (Tex. 1985). *Pollard*, 759 S.W.2d at 671. *Redinger* recognized that one who retains control of any part of the work of a contractor may be subject to liability for harm befalling a contractor's employee if the person negligently exercises his control. *Redinger*, 689 S.W.2d at 418. Neither *Pollard* nor *Redinger*, however, dealt with the issue before us, namely, whether the

---

[9] The court's conclusion in *Southard* is equally applicable here:

Under the undisputed facts, it is quite obvious that it was necessary for the Lumber Company to exercise some supervision over the loading and unloading of the trucks, if the hauling of the logs was to be done efficiently and expeditiously. If this had not been done, much danger and confusion would have been the inevitable result. Under the facts of this case, such supervision did not create the relationship of master and servant between the Lumber Company and the haulers of the logs; nor did it change the status of the contracting parties and make Southard, an independent contractor, an employee of the Lumber Company.

*Id.*

16

relationship between two parties is one of employer-employee rather than independent contractor. Critically, the rule adopted in *Redinger*, followed in *Pollard*, applies even when the working relationship between two parties is conclusively one of independent contractor, as was the case between MOPAC and Pollard's employer. *Pollard*, 759 S.W.2d at 670; *Redinger*, 689 S.W.2d at 418. As *Redinger* explained, its rule applies even if the person charged with negligence "does not retain the degree of control which would subject him to liability as a master." *Redinger*, 689 S.W.2d at 418. In *Pollard*, the court held that a fact question existed whether MOPAC was responsible under *Redinger* because MOPAC contractually retained: (1) control over the completion time of the contract, (2) authority to specify the poles to be removed, (3) authority to specify insurance coverage, and (4) control over access and storage of materials involving MOPAC's rights-of-way. *Pollard*, 759 S.W.2d at 670. The facts in *Pollard* may have been sufficient to support a fact question on MOPAC's direct liability under *Redinger*, but *Pollard* did *not* conclude that those facts were sufficient to consider MOPAC as Pollard's employer, an issue not raised in that case.

Even assuming the evidence in this case were sufficient to give rise to potential liability under *Redinger*—an argument Halstead does not advance—the TTCA does not waive immunity for such a claim because the negligent use of motor-driven equipment must be by the governmental unit's employee. For the reasons we have stated, Halstead was not HCFCD's employee as a matter of law when the accident occurred.

Because Halstead's claim does not fall within the limited waiver of immunity provided by the TTCA's motor-driven equipment exception, the trial court erred in denying HCFCD's jurisdictional plea. We sustain HCFCD's second issue.

17

## D.    Disposition

As a general rule, if the pleadings do not allege facts sufficient to allow the court to determine whether it has jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226-27.  An opportunity to amend is not warranted, however, if (1) the pleadings or record conclusively negate the existence of jurisdiction, (2) the plaintiff failed to show jurisdiction despite having had full and fair opportunity in the trial court to develop the record and amend the pleadings, or (3) if such opportunity was not given, the plaintiff would be unable to show the existence of jurisdiction if the cause were remanded to the trial court and such opportunity afforded. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 96-97 (Tex. 2012).

Here, Halstead's alleged facts potentially support recovery only under section 101.021(1) for negligent use of motor-driven equipment and will not support recovery under a premises defect theory.  Halstead affirmatively pleaded that his injury occurred while he was using the chainsaw, and he did not plead that any HCFCD employee operated the chainsaw.  Thus, a waiver of governmental immunity under section 101.021(1) is affirmatively negated by Halstead's Third Amended Petition.  The right to amend does not arise if the live pleading affirmatively negates jurisdiction based on the claims pleaded. *See Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 559 (Tex. 2019) (citing *Rusk State Hosp.*, 392 S.W.3d at 96-97).  Moreover, he had a full and fair opportunity to develop the record in support of his position that he should be considered a HCFCD employee.  The trial court granted HCFCD's first plea to the jurisdiction and dismissed Halstead's claims without prejudice to refiling.  Halstead amended his petition twice more.  He then filed a response to HCFCD's second jurisdictional plea, attaching evidence.  The record, however, does not give rise to a genuine issue of material fact on more

18

than one element of his claims. Thus, the proper remedy is to reverse the order denying HCFCD's plea to the jurisdiction and render judgment dismissing Halstead's claims for lack of subject-matter jurisdiction. *San Jacinto River Auth. v. Ogletree*, 594 S.W.3d 833, 839-40 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

## Conclusion

Halstead's claim is properly characterized as one based on the use of motor-driven equipment, and there is no allegation or evidence that a HCFCD employee was operating the chainsaw at the time the injury is alleged to have occurred. Having sustained HCFCD's dispositive issue, we reverse the trial court's order denying HCFCD's plea to the jurisdiction. We render judgment dismissing Halstead's claims against HCFCD for lack of subject-matter jurisdiction.


/s/ Kevin Jewell
   Justice


Panel consists of Justices Jewell, Bourliot, and Poissant.

19